**Michael DECKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67567.**

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

On Rehearing Sept. 24, 1986.

Blake Bailey, Henderson, for appellant.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of burglary of a habitation; the punishment is imprisonment for ten years and one day.

The appellant asserts the trial court erred in refusing to allow him to peremptorily strike the juror L.J. Rich so that he might be replaced by another juror, even though Rich had been impaneled. Ordinarily there is no right to challenge a juror peremptorily after the juror has been sworn to try the case; *Carrasco v. State,* 101 Tex.Cr.R. 91, 274 S.W. 155 (Tex.Cr.App. 1925); *Crow v. State,* 89 Tex.Cr.R. 149, 230 S.W. 148 (Tex.Cr.App.1921); but the circumstances here are not such as ordinarily occur.

During jury voir dire appellant's counsel asked if any of the panel members knew the complainant John Oliver. One of the panel members stated that he did. Several questions and answers were exchanged between the appellant's counsel and Mitchell, the panel member. This colloquy was before the panel, but no other panel member stated that he knew the complainant. The jury selection continued, the State and defense made their peremptory challenges, the jury was sworn, and excused for lunch.

After lunch but before the trial on the merits commenced, there was a hearing in which L.J. Rich, the juror who had been selected, impaneled, and sworn, testified. After he had been selected and sworn as a member of the jury he "recognized" the complainant. (The record is not clear, but apparently Rich saw and recognized the complainant during the lunch period.) Rich knew the complainant and testified they were welders on the same job and had been for several months. He testified he knew nothing about the case and his acquaintanceship with the complainant would not affect his duties as a juror.

After Rich testified, appellant's counsel stated he did not believe that Rich could be challenged for cause, but if he had had the information Rich now revealed about his acquaintanceship and work with the complainant he would have used one of his strikes to peremptorily challenge Rich and said: "So, I object to the use of this juryman and move that we have a mistrial at this time and a new *juror* be picked." (Emphasis added) The court summarily overruled the motion and objection and proceeded with the trial.

The appellant's counsel, dutifully in defense of his client, severely cross-examined the complainant and also at both stages of the trial offered testimony which tended to cast an unfavorable image of the complainant. The juror Rich was elected foreman of the jury, and signed the verdict.

Apparently Rich was not intentionally deceptive in failing to disclose his relationship with the complainant; nevertheless, this relationship was not made known to the appellant's counsel when he asked a specific question to elicit such information. Counsel did not have this information when he exercised his peremptory challenges. Similar cases are *Von January v. State,* 576 S.W.2d 43 (Tex.Cr.App.1978) and *Salazar v. State,* 562 S.W.2d 480 (Tex.Cr.App.1978), both of which were reversed because jurors did not divulge important information which could have been used in exercising peremptory challenges. This case is unlike *Babin v. State,* 149 Tex.Cr.R. 339, 194 S.W.2d 563 (Tex.Cr.App.1946), in which the juror said he knew the deceased when he saw him; this placed counsel on notice that an acquaintanceship existed between the juror and victim; the nature of that relationship counsel could have determined by further interrogation of the prospective juror.

In view of the relief requested by counsel, and even though the jury had been sworn in this case, it would have been proper for the court to have excused Rich and utilized a procedure to select another juror much like that used in *Williams v. State,* 631 S.W.2d 955 (Tex.App.—Austin 1982). In that case, after a jury was selected but before being sworn, one juror became ill and was excused for cause. The court allowed the State and defendant to voir dire five prospective jurors and gave each two peremptory challenges to replace the juror excused.

In the instant case defense counsel used diligence to determine facts so that he could intelligently exercise his peremptory challenges, but he was denied important information by the prospective juror Rich, although Rich apparently did not intend to deceive.

The appellant has also urged that if the evidence he asserts was unlawfully obtained is excluded, the evidence is insufficient to support his conviction. He says the confession offered by the State and admitted by the court was obtained after his unlawful arrest and it was tainted by his giving of an earlier confession taken without compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The affidavit and warrant under which appellant was arrested are not in the record; we cannot, therefore, determine whether appellant's arrest was unlawful. Strangely enough the earlier confession, the giving of which the appellant says tainted the confession offered by the State, was offered in evidence before the jury by the appellant and admitted by the court as defense Exhibit Number One. Therefore, the appellant waived his objection to the admission of the confessions. The record would support a finding that the money obtained from the appellant's residence was obtained by his consent. This being the rather bizarre state of the record, it appears that the appellant's complaints concerning the admission in evidence of the confession and evidence concerning the money taken from his residence are without merit and the evidence would support the verdict.

Since the appellant was denied his right to peremptorily challenge a prospective juror, the judgment will be reversed.

The judgment is reversed and the cause remanded.

ONION, P.J., and CAMPBELL, J., dissent.

### OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

On original submission, a majority of this Court reviewed appellant's third ground of error, found reversible error and remanded the case for a new trial because the trial court erred in refusing to allow appellant to peremptorily strike a juror after that juror had been impaneled. We granted the State's motion for leave to file a motion for rehearing to reconsider that holding.

The record shows that, during his voir dire examination, defense counsel asked if any of the panel members knew the complainant, John Oliver. Only one panel member, prospective juror Mitchell, answered affirmatively. The questioning continued, the State and defense made their peremptory challenges and the jury was sworn in and then excused for lunch. After lunch but before the trial began, the record shows the trial court held an in camera hearing during which juror L.J. Rich testified in response to questioning by defense counsel that *after* he had been selected and sworn in as a member of the jury he recognized the complainant. The pertinent portion of his testimony is set out below:

"Q. Mr. Rich, you have come to me and to the Judge after the jury selection and have indicated now that you know Mr. John Oliver?

"A. Yes, sir.

"Q. You recognized him when he came in?

"A. Yes, sir.

"Q. How do you know Mr. Oliver?

"A. He works for the same job I do.

"Q. How long have you two worked on the same job?

"A. Oh, I been out there about nine months. Probably met him, oh, seven, eight times during that time.

"Q. Both of you do the same type of work?

"A. He's a welder and I am too.

"Q. Have you ever gone out after work; have a beer, anything like that?

"A. No, sir.

"Q. You both have the same foreman?

"A. No.

"Q. Have you ever both had the occasion to discuss the fact that he had somebody break into his house and take some things?

"A. I didn't even know nothing about it.

"Q. Do you consider him to be a friend of yours out at work?

"A. Nothing other than, you know, fellow worker is all.

"Q. Is there anything about that relationship that you feel would cause you to lean in any degree toward John Oliver's side?

"A. No, sir.

"Q. You know I'm going to have to cross examine Mr. Oliver. Do you feel that you can be totally unbiased and impartial as a juror even though he's going to take a diametrically opposed view to my side of the story?

"A. I don't think it would make any difference to me.

"Q. Well, when you say you don't think it would, you don't think it would?

"A. That's correct.

.     .     .     .     .

"THE COURT: In other words, what you are saying, Mr. Rich, is that the fact that you now realize since the complaining witness in this case is an acquaintance of yours that it wouldn't make you any difference either way?

"THE WITNESS: No, sir, I don't think it would make a bit of difference to me.

"THE COURT: And you could be a fair and impartial juror to both sides at this time?

"THE WITNESS: Yes, sir."

On original submission appellant argued that reversible error was committed when the trial court failed to declare a mistrial when it was discovered that Rich was a fellow worker of the complaining witness. This Court, relying on *Von January v. State,* 576 S.W.2d 43 (Tex.Cr.App.1978), and *Salazar v. State,* 562 S.W.2d 480 (Tex. Cr.App.1978), held that the trial court erred in refusing to allow appellant to peremptorily strike Rich so that he might be replaced by another juror.

■ We now find that our previous reliance on *Salazar* and *Von January* was misplaced and that those cases are distinguishable from the facts of the present case in that the objectionable jurors in those cases intentionally gave false *material* information to the attorneys during voir dire. In the instant case, the record shows that Rich did not intentionally give false information during the voir dire examination. Rather, the record shows that Rich did not realize that he knew the complaining witness until he saw the complaining witness walk into the courtroom immediately before the trial was to commence, but after voir dire and jury selection had been completed. Upon recognizing the complaining witness, he immediately informed the trial court. Further, we find that the information was not *material,* in that the record shows that Rich's acquaintance with the complaining witness was only that—an acquaintance through employment. There was evidence that the two men had never socialized together or had any type of friendship. They merely worked at the same job site. Thus, we find that there was no showing that such relationship had any potential for prejudice or bias on the part of Rich.

In *Salazar,* a prosecution for indecency with a child, Juror Wooley noted on his juror information sheet that he had never been a complainant or witness in a criminal case. During voir dire by the State, he again indicated that he had never before been a witness in or involved in a criminal proceeding. Both parties accepted Wooley on the jury. During Salazar's trial, after the State had rested its case, Wooley told the judge that he had given false information during the voir dire examination regarding his previous involvement in a criminal case. He told the judge that five years earlier he had witnessed the sexual assault of his daughter by a Mexican-American male and had testified against the man in a trial. Wooley told the judge that his previous involvement would not influence his decision in Salazar's case and he would judge the case strictly from the evidence adduced at trial. This Court held that the trial court erred in not granting appellant's motion for mistrial.

"Where a juror withholds *material* information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury. That a juror will state that the fact that he withheld information will not affect his verdict is not dispositive of the issue where the information is *material* and therefore likely to affect the juror's verdict.[5]

---

[5] "We do not hold that an appellant is entitled to a reversal of his conviction in any case in which he discovers that a juror withheld information during voir dire. *Where the information is not material and the juror can state that it will not affect his deliberation or verdict, an appellant may be unable to show harm."* *Salazar v. State,* 562 S.W.2d at 482. (Emphasis added).

In *Von January,* Juror Dunn was asked along with the other panel members if he knew the deceased or his family. Although he knew the family quite well, Dunn did not inform the attorneys. At a hearing on appellant's amended motion for new trial, Dunn admitted that he knew the family and that he might have been wrong in failing to answer defense counsel's question and letting him know that he knew the family. This Court reversed Von January's conviction after finding that Dunn's failure to truthfully answer the question propounded to him prevented defense counsel from making the determination as to whether his relationship to the deceased's family made him unacceptable.

Because we find that there is no showing that appellant was deprived of an impartial jury or denied a fair trial in any way as a result of the trial court's action, we find that the trial court did not err.

■ On original submission, appellant raised three grounds of error concerning probable cause to arrest, the admission into evidence of two confessions made by him, along with the money allegedly stolen in the burglary which was retrieved from his residence, and finally, the sufficiency of the evidence to sustain his conviction. The opinion on original submission summarily reviewed these grounds and found them to be without merit:

"The affidavit and warrant under which appellant was arrested are not in the record; we cannot, therefore, determine whether appellant's arrest was unlawful. Strangely enough the earlier confession, the giving of which the appellant says tainted the confession offered by the State, was offered in evidence before the jury by the appellant and admitted by the court as defense Exhibit Number One. Therefore, the appellant waived his objection to the admission of the confessions. The record would support a finding that the money obtained from the appellant's residence was obtained by his consent. This being the rather bizarre state of the record, it appears that the appellant's complaints concerning the admission in evidence of the confession and evidence concerning the money taken from his residence are without merit and the evidence would support the verdict." (See page 905)

We have reviewed the record pertaining to these grounds and find that the opinion on original submission was totally correct in its holdings and we thereby adopt the language set out above. Appellant's first, second, and fourth grounds of error are overruled.

■ In his final ground of error, appellant's summary of argument reads as follows:

"The State's counsel in illiciting support of the jury to fight the war against crime rather than properly analyze the facts of this specific case was blatant prejudicial error; and the Court obviously approved the argument in refusing to instruct the jury to disregard which compounded what already amounted to reversible error."

Under the section entitled "Argument and Authorities," appellant merely cites us to *"Pennington v. State* [171 Tex.Cr.R. 130] 345 S.W.2d 527." Although appellant's brief is deficient in that it does not cite us the point in the record where such argument occurred, we have reviewed the State's closing argument and set out in pertinent part the portion of the argument which we believe appellant is objecting to:

"Ladies and gentlemen, Mr. Bailey [the defense attorney] said that today you were the body politic representing the people. I would submit that is true. Today you are the voice of Franklin County. We can't do the job without you. We're fighting a war on crime.

"MR. BAILEY; Your Honor, I object to that. That is not the burden that this jury has to fight a war on crime. They are trying to resolve facts as to Mike Decker and I object to that and resent that insinuation that they have some duty other than to resolve the facts of this case.

"THE COURT: Overruled.

"MR. HUGHES: We're fighting a war on crime. What I'm doing at this point is making no more than appeal for law enforcement. That is a proper argument, to enforce the laws. To apply the laws." [material in brackets added]

*Pennington v. State,* supra, cited by appellant, is not in point. In that case reversible error was committed when the prosecutor made the following statement:

"The people of Nueces County expect you to put this man away."

Unlike *Pennington,* the argument in the instant case was not an improper attempt to induce the jury to convict because the

community desired or expected a conviction.

Rather, we find that this Court's holding in *Holloway v. State*, 525 S.W.2d 165, 170 (Tex.Cr.App.1975), to be applicable to the instant case. In *Holloway*, the prosecutor argued:

"What should be done with him in this case? And certainly you can consider what many people call 'a war on crime,' and, in essence, it is a war, except the battlefields are different."

This Court, citing *Cunningham v. State*, 484 S.W.2d 906, 911 (Tex.Cr.App.1972), found the argument to be a proper plea for law enforcement. We agree. As we have noted on many occasions, a plea for law enforcement is a proper area of jury argument. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973). We find no error in the prosecutor's argument. Appellant's fifth ground of error is overruled.

The State's motion for rehearing is granted and the judgment of the trial court is affirmed.

CLINTON, J., dissents.

MILLER, J., dissents to disposition of appellant's third ground of error only.

TEAGUE, Judge, concurring and dissenting.

On rehearing the State asserts that a majority of this Court erred on original submission when it sustained the appellant's third ground of error, to-wit: "The court erred in not declaring a mistrial when it learned that one of the jurors had not informed Appellant's counsel of his relationship to the Complaining Witness [, a fellow worker, during the voir dire examination] because the lack of that information did not allow Appellant's counsel to adequately and properly strike his jury panel list." In light of what the majority opinion states in the opinion on rehearing, I agree that this Court erred on original submission when it sustained the appellant's ground of error, but do so for different reasons. Therefore, I only concur in the decision to sustain the State's motion for rehearing on this point.

What will be sufficient to mandate the granting of a motion for mistrial, or the granting of a new trial, because a juror failed to respond to questioning by the trial judge or counsel during the voir dire examination, must of necessity be decided on an *ad hoc* basis.

In this instance, because the juror's relationship with the complaining witness was shown only to be casual, and also because the complaining witness only testified before the jury to the fact that his residence was burglarized by an unknown person, the majority opinion correctly holds that the failure by the juror to disclose during the voir dire that he knew the complainant was insufficient to mandate the granting of a new trial.

I part company with the majority opinion, and thus cannot join that part of the opinion, because it implicitly holds that failure by a prospective juror to divulge a mere casual employment relationship with the complaining witness will never constitute reversible error. Again, such a complaint must be judged on the facts of the particular case.

In this instance, because the majority opinion does not state that the complaining witness was asked to be physically identified during the voir dire process, I must assume that he was not physically singled out to the prospective jurors at that time. Thus, it is quite likely that even though the name of the complainant might have been mentioned to the prospective jurors during the voir dire process, the name of the complainant did not "ring any bells" for the challenged juror.

In principle, I find that the issue here is controlled by this Court's decision of *Pigg v. State*, 162 Tex.Cr.R. 521, 287 S.W.2d 673 (1956), in which this Court held that reversible error did not occur when a juror in that cause did not advise the trial judge or the attorneys for the parties during the voir dire of the fact that he had "casually" known the injured party for several years. The juror made this fact known after the

injured party had testified. The juror testified that the omission resulted because of his poor eyesight. In rejecting the defendant's contention, this Court stated the following: "We have concluded that the fact that the juror knew the witness 'only when he saw him' would not affect his verdict and was not grounds for a mistrial ..." (287 S.W.2d at 674).

Given the state of the record before us, I agree with the majority opinion that the trial judge did not err in failing to grant the appellant's motion for mistrial because the juror did not divulge the fact that he had a casual relationship with the complainant. Thus, I only join this part of the opinion.

The majority opinion, however, erroneously holds that the argument of the prosecuting attorney, to-wit: "Today you [the jurors] are the voice of Franklin County. We [the people of Franklin County and law enforcement] can't do the job without you. We're fighting a war on crime," constitutes a proper plea for law enforcement. In so holding, the majority opinion relies upon *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr. App.1975), in which the prosecuting attorney argued, "And certainly you [the jurors] can consider what many people call 'a war on crime,'" which this Court found to be a proper plea for law enforcement. As should be obvious to anyone, such reliance is totally misplaced because of the obvious differences between the arguments.

I find that this argument merely represents "nothing more than an effort to put new garb on an old emperor." *Cortez v. State*, 683 S.W.2d 419, 421 (Tex.Cr.App. 1984). This was not a plea for law enforcement; it was instead a plea to the jury "to lend an ear to the community rather than a voice." *Prado v. State*, 626 S.W.2d 775 (Tex.Cr.App.1982). A prosecuting attorney's argument that represents or amounts to a plea to the expectations or demands of the community has long been condemned by this Court. See the authorities cited in *Dorsey v. State*, 709 S.W.2d 207, 209 (Tex. Cr.App.1986) (Teague, J., dissenting opinion).

The majority opinion thus errs in approving the above argument as a proper plea for law enforcement. Given the argument of the prosecuting attorney, the majority opinion's holding that it was a proper plea for law enforcement conflicts with many, many of this Court's past decisions. See supra. Therefore, I must respectfully dissent to overruling the appellant's contention that the argument was improper.