Ludwig v. State 






REFORMED & AFFIRMED
AUGUST 23, 1990

NO. 10-90-118-CR
Trial Court
# 90-017
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

RONALD DAVID LUDWIG,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

* * * * * * * * * * * * *

 From 40th Judicial District Court
Ellis County, Texas

* * * * * * * * * * * * *
     
     Appellant Ronald David Ludwig has been charged with the
murders of Matthew David Trojacek and Joseph David Trojacek. 
Appellant faces three indictments, one for the crime of capital
murder and the other two for the crime of non-capital murder. The
penalty upon conviction for non-capital murder is confinement in
the Texas Department of Corrections for up to 99 years or life and
the penalty upon conviction for capital murder is death. 
     Appellant brought a habeas corpus action in the 40th Judicial
District Court of Ellis County, Texas, seeking a reduction in bond. 
The district court denied appellant relief and issued an order
continuing bond at $2,000,000 for all three indictments. This
appeal resulted. Appellant asserts that the bail is excessive and
that the trial court abused its discretion by refusing to reduce
the bail.
The burden of proof falls upon the party requesting the bail
reduction; therefore, the party must prove that the bail is
excessive under the circumstances. Ex parte Rodriguez, 595 S.W.2d
549, 550 (Tex.Cr.App. 1980). Vernon's Ann.C.C.P. art. 17.15
provides the following guidelines which are to be considered when
setting bail: 
The amount of bail to be required in any case is to
be regulated by the court, judge, magistrate or officer
taking the bail; they are to be governed in the exercise
of this discretion by the Constitution and by the
following rules:
(1) The bail shall be sufficiently high to give
reasonable assurance that the undertaking will be
complied with.
(2) The power to require bail is not to be so used as to
make it an instrument of oppression.
(3) The nature of the offense and the circumstances
under which it was committed are to be considered.
 (4) The ability to make bail is to be regarded, and
proof may be taken upon this point.
(5) The future safety of the victim of the alleged
offense may be considered.
None of the above statutory guidelines is controlling on the
issue of setting the amount of bail. For example, the defendant's
"ability or inability to make bail does not in and of itself
control that amount, that factor must be considered along with the
other statutory elements." Ex parte Gentry, 615 S.W.2d 228, 231
(Tex.Cr.App. 1981). Other relevant factors and considerations to
be used in setting bail include the appellant's work record, family
ties, length of residency, ability to make bond and prior criminal
record. Ex parte Rubac, 611 S.W.2d 848, 849 (Tex.Cr.App. 1981).
At the habeas corpus proceeding there was evidence presented
that appellant made verbal threats to his wife against the safety
and lives of appellant's brother-in-law, nephew and mother-in-law. 
The brother-in-law, Joseph David Trojacek, and nephew, Matthew
David Trojacek, are now deceased and his mother-in-law fears for
her safety because of the prior threats made by appellant. The
State's only other evidence was a description of the crime scene by
the investigating peace officer and the indictments against
appellant.
Appellant's evidence showed that he is a long-time resident of
Texas, the owner of real property in the state, is licensed to
practice veterinary medicine in Texas and has such a practice in
Katy. Appellant has several close relatives who are also long-time
Texas citizens and are willing to sign a bond insuring appellant's
appearance at trial. Appellant is involved in a child custody
proceeding, in conjunction with his divorce, in Harris County,
Texas, which will require his presence in the jurisdiction. 
Appellant's ability to make bond is limited because his assets,
both community and separate, have been frozen by a temporary court
order made in the divorce action. Additionally, appellant has no
prior criminal record. 
The crimes charged against appellant, including the capital
offense, are bailable offenses since the State did not prove or 
even attempt to prove "clear and strong evidence which would lead
a well guarded judgment to the conclusion that an offense was
committed, that the accused is the guilty agent and that he would
probably be punished by death penalty if the law is administered." 
Beck v. State, 648 S.W.2d 7, 9 (Tex.Cr.App. 1983). The
consideration of safety to the victim is just one factor and does
not justify the detention of a presumptively innocent defendant by
the use of excessive bail.
After considering the foregoing under the applicable rules, we
find that the bail set is excessive, and we reduce the bail to
$1,000,000 for all three indictments.
The judgment is reformed to show bail to be $1,000,000. As
reformed, the judgment is affirmed.
 
                          
VIC HALL 
DO NOT PUBLISHJustice 



ight: -0.0625in">JUROR WITHHOLDING INFORMATION
      Fisher contends that he was denied due process when Juror David Lee Maughan withheld
information during voir dire. Maughan did not respond when the judge asked the jury panel if
anyone knew anything about the facts of the case. Fisher alleges that Roy Alexander, a defense
witness, talked with Maughan about the shooting a few days after it occurred. The alleged
conversation took place at a convenience store where Maughan was employed and Alexander was
a customer.
      Fisher filed a motion for mistrial, which the court overruled after a hearing. Maughan testified
during the hearing that he recognized Alexander as a customer of his store but did not recall having
a conversation with him concerning the shooting. Fisher also claims that Maughan knew and had
prior dealings with Fisher that he did not disclose when the judge asked during voir dire if anyone
knew Fisher. Maughan testified that he had seen Fisher before at Smoker’s Billiards but had never
had any conversations with him other than to say “hello.” Maughan also stated that he did not
realize he knew Fisher until the middle of trial “when we kept staring at each other throughout the
court.” 
      In Von January v. State, the court granted a new trial because a juror failed to disclose during
voir dire that he knew family members of the victim. 576 S.W.2d 43, 44 (Tex. Crim. App. [Panel
Op.] 1978). In that case, the juror realized he knew the family well yet failed to admit this when
questioned by defense counsel during voir dire. In this case, Maughan testified that he did not
recognize Fisher as an acquaintance until after voir dire. 
      Decker v. State closely resembles the facts in the present case. 717 S.W.2d 903, 906-907
(Tex. Crim. App. 1986) (on rehearing). A juror realized after the trial had started that he
recognized one of the complaining witnesses. Id. The record showed that the juror did not
intentionally give false information during voir dire. Id. Further, the juror was acquainted with
the witness through work but did not have a relationship which had any potential for prejudice or
bias. Id. The court in Decker found the above facts to be distinguishable from Von January
because the juror did not intentionally give false information and no significant relationship existed
between the juror and the witness. Id. 
      Maughan’s testimony shows that he did not remember any conversation with Alexander about
the facts of the case. Therefore, Maughan did not intentionally withhold or give false information
during voir dire when the judge asked if anyone knew the facts of the case. He also testified that
he did not realize until after voir dire that he recognized the defendant from Smoker’s Billiards. 
The fact that Fisher had long hair and a beard which he had cut and shaved prior to trial further
supports Maughan’s testimony that he did not recognize Fisher. 
      Maughan and Fisher had a casual acquaintance. Fisher testified that he did not recognize
Maughan during voir dire. During the trial, they realized they had seen each other at Smoker’s
Billiards. Clearly, no significant relationship existed between the two men. Therefore, Fisher
failed to show that his causal acquaintanceship with Maughan had any potential for prejudice or bias
on the part of Maughan. Id. 
      We overrule the first point of error.
FACTUAL INSUFFICIENCY
      Fisher’s second point of error asserts that the evidence is factually insufficient to support the
conviction in light of his self-defense claim. Fisher alleges that testimony proves Ricky Wilkins
was the aggressor who threw a quart of beer at Fisher, leading Fisher to shoot in self-defense.
      When presented with a factual insufficiency claim, we discard the prism of the light most
favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We
reverse “only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.” Id. 
      All of the evidence in the record related to the contested issue is considered. Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Evidence which tends to prove the issue is
compared with evidence which tends to disprove the issue. Id. We give appropriate deference to
the jury’s decision and do not substitute our judgment for theirs. Clewis, 922 S.W.2d at 135. We
do not set aside the “verdict merely because [we] feel that a different result is more reasonable.” 
Id. (quoting Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986)). 
      The court submitted self-defense in the jury charge. A person is justified in using force against
another when and to the degree he reasonably believes force is immediately necessary to protect
himself against the other person’s use or attempted use of force. Tex. Penal Code Ann. § 9.31(a)
(Vernon 1994). The use of force is not justified in response to verbal provocation alone or if the
actor provoked the other’s use or attempted use of force. Id. § 9.31(b)(1), (b)(4) (Vernon Supp.
1997). Deadly force may only be used when self-defense is justified under Section 9.31; a
reasonable person would not have retreated; and when deadly force is reasonably necessary to
protect against another’s use or attempted use of deadly force. Id. § 9.32(a)(1)-(3)(A) (Vernon
Supp. 1997). 
      We review the record to determine if factually sufficient evidence exists to support the jury’s
verdict that Fisher did not act in self-defense when he shot Wilkins. The following evidence tends
to disprove Fisher’s claim of self-defense:
      ∙    Douglas Markel witnessed the argument and testified that Wilkins was returning to his car
when Fisher reached from behind his back and pulled a pistol out. Fisher testified that
Wilkins walked back towards his car and he thought he was leaving. 
 
      ∙    Markel testified that Wilkins said, “Jimmy, don’t you ever pull a gun on me again.” 
Jimmy responded, “You are right Ricky, I won’t”. Markel then testified that Fisher
pointed the gun at Wilkins and the gun made a click.
 
      ∙    At this point, Wilkins threw a quart bottle of beer at Fisher. Fisher ducked and was not
hit by the bottle. Fisher then fired the pistol at Wilkins who was crouched down beside
his car.
 
      ∙    Markel testified that Wilkins stood up and Fisher fired a second shot. Markel said Fisher
then ran into the building and Wilkins was on the ground.
 
      ∙    Fisher testified that Wilkins did not pull anything out of his pocket when he reached in his
back pocket.
 
      Other evidence in the record suggests a self-defense claim:
      ∙    Doug Markel testified that Wilkins got out of the car and walked over to Fisher and Linda
Fisher who were arguing about money. Linda Fisher then said that Wilkins and Fisher
began arguing and cussing.     
 
      ∙    Fisher testified that Wilkins said, “[H]e was going to get on me or jump on me.” Fisher
also testified that he had seen Wilkins jump on other people. Fisher then went to his van
to get his gun which he tucked in his back pocket.
 
      ∙    Fisher said they continued arguing and Wilkins went for his back pocket and told Fisher
he was going to kill him. Fisher testified that he then brought out his gun.
 
      ∙    Linda Fisher stated that Fisher pulled out his gun and when Wilkins saw it, he said he was
going to kill Fisher.
 
      ∙    Fisher told Wilkins to leave him alone and Wilkins responded by saying he was going to
kill him. Wilkins than began walking toward his own car.
 
      ∙    Fisher turned to walk inside but fired a shot into the air when Wilkins cussed at him. 
Wilkins responded by saying, “You are going to kill me now because I’m killing you.”
 
      ∙     Linda Fisher testified that she heard the beer bottle crash and the shot go off.
 
      ∙    Jason Chambers, a police investigator, testified that a substantially full quart of beer bottle
could cause serious injury or death.
 
      Fisher argues that Wilkins was the aggressor who initiated the confrontation and Fisher was
justified in using deadly force because Wilkins threw the quart bottle of beer. Even if Wilkins
started the argument, verbal provocation alone does not justify the use of force. Id. § 9.31(b)(1). 
Threats to kill will not justify the use of deadly force unless there is a manifestation of intent to
execute such threats. Hughes v. State, 276 S.W.2d 274, 277 (Tex. Crim. App. 1955). Fisher did
testify that Wilkins reached for his pocket but did not bring out any weapon. Wilkins might have
made verbal death threats but had no instrument to carry out his threats. 
      Clearly, Wilkins threw the bottle of beer after Fisher brought out the gun. Fisher escalated
the incident by pointing the gun at Wilkins. The use of force is not justified when the actor
provoked the other’s use of force. Id. § 9.31(b)(4). Further, after Wilkins threw the beer bottle
he had no other weapon to use against Fisher. At this point, Fisher’s continued use of deadly force
was unreasonable because Wilkins no longer posed a threat. See Id. § 9.32(a)(3)(A) 
      Deadly force can only be used if a reasonable person would not have retreated. Id. §
9.32(a)(2). If Fisher believed that Wilkins was going to kill him he could have reasonably retreated
into Smoker’s Billiards. However, he did not do so. 
      The jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Santellan, 939 S.W.2d at 164. We must give due deference to the jury on these issues. 
Id. at 166. After reviewing the evidence, we cannot say the verdict “is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.” Clewis, 922 S.W.2d at
134. Thus, we overrule Fisher’s second point of error. 
      We, therefore, affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice
 
 
Before Chief Justice Davis
            Justice Cummings and
            Justice Vance
Affirmed
Opinion delivered and filed September 24, 1997
Do Not Publish