**Eric Deshawn MILO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–105 CR.**

Court of Appeals of Texas,
Beaumont.

May 29, 1996.

Rehearing Overruled June 20, 1996.

Willis Everett Smith, Kingwood, for appellant.

Daniel C. Rice, District Attorney, Conroe, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury found Eric Deshawn Milo guilty of murder and assessed his punishment at life in the Texas Department of Criminal Justice—Institutional Division and a fine of $10,-000. Milo urges two points of error. The first alleges the prosecutor's closing argument at the guilt/innocence phase of the trial constituted an improper comment on Milo's failure to testify. The second alleges the trial court erred in denying Milo's motion for mistrial during the punishment stage of the trial. We consider them in reverse order since the second is dispositive.

Milo moved for a mistrial after discovering that a juror, Brenda Oliver, had failed to make known her relationship with a state's witness, LaTonja Wheaton. During voir dire examination the prosecutor was asking the entire panel about their familiarity with the state's witnesses:

[The Prosecutor]: Another witness the State plans on calling, LaTonja Wheaton. Okay, LaTonja is about 33, she normally lives at 1206½ North 7th here in Conroe. Does anybody know her?

[No response from panel]

During a hearing on the motion for mistrial, a Gloria Wheaton testified she was the sister of LaTonja Wheaton and both she and LaTonja had been raised with Brenda Oliver so they called each other sister. She testified this relationship had existed for ten years or longer. Brenda Oliver testified that she had lived in the same house with LaTonja for about four years and at 1206½ North 7th in Conroe for about a year and a half or two years of that time. Ms. Oliver testified she claimed LaTonja on her income tax and gave LaTonja $50 a year, but she doesn't "run around with her". Ms. Oliver testified she did not respond to the prosecutor because the LaTonja Wheaton she knew was 25 years of age, not 33 as the prosecutor indicated. Ms. Oliver also stated her relationship with LaTonja had not influenced her in any way and she was able to be a fair juror.

*Von January v. State*, 576 S.W.2d 43 (Tex. Crim.App.1978) reversed a conviction where a juror failed to answer when asked whether any of the prospective jurors knew any members of the deceased's family. The court stated:

In the present case, Maurice Dunn testified that although he knew and recognized the Parkers he did not answer defense counsel's question because he did not have any close personal dealings with the family. He believed that it was only this personal type of relationship that counsel was interested in when he propounded the question. It was not Dunn's function to second-guess defense counsel. It was for defense counsel, and not the prospective juror, to decide whether Dunn's relationship with the Parkers made him unacceptable and subject to a peremptory challenge. Dunn's failure to truthfully answer the question propounded to him prevented defense counsel from making this determination.... If Dunn had correctly answered the question that he knew the Parker family, appellant could have pursued the questioning further. The jury system and its purity should not be taken lightly.

*Id.* at 45–46.

In *Salazar v. State*, 562 S.W.2d 480, 481 (Tex.Crim.App.1978), a juror noted on his juror information sheet that he had never been a complainant or a witness in a criminal case. He indicated the same upon voir dire by the State. During the course of the trial, the juror told the judge he had given false information during the voir dire concerning his previous involvement in a criminal case. He had, in fact, been a witness in a criminal trial five years prior. He had witnessed a sexual assault on his daughter by a Mexican–American man. He told the court this previous involvement would not influence his decision in the case and he had not related this to any of the other jurors, nor would he do so. The court stated:

Where a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial

jury. That a juror will state that the fact he withheld information will not affect his verdict is not dispositive of the issue where the information is material and therefore likely to affect the juror's verdict.

*Id.* at 482.

In *Herrera v. State,* 665 S.W.2d 497 (Tex. App.—Amarillo 1983, pet. ref'd) the court of appeals relied upon *Von January, Salazar,* and *Norwood v. State,* 123 Tex.Crim. 134, 58 S.W.2d 100 (1933), in reversing a conviction where a juror had withheld information about being the victim of an assault and the trial was for murder and voluntary manslaughter.

The witness, LaTonja Wheaton, gave crucial testimony against Milo. Milo's defense was alibi. He presented two witnesses who placed him with his girlfriend in her bedroom at the time of the murder. Ms. Wheaton testified she was at the home of a friend when Milo drove up and had words with the deceased over a money problem involving dope. Milo left and then returned. He showed her a gun and gave her a choice to leave or stay, stating: "Why don't you and Trina get on those bikes and go for a little ride because you don't want to see what is about to happen. Either you can stay, and don't see nothing or you can leave and not see nothing". Ms. Wheaton testified she left and then heard gun shots. She returned to find the deceased laying face down in the dirt.

The State argues this case is more like *Decker v. State,* 717 S.W.2d 903 (Tex.Crim. App.1983) than *Von January* or *Salazar.*

The juror in *Decker* did not acknowledge he knew the complaint during the voir dire examination, but later advised the court he recognized the complainant because they worked on the same job together. The court distinguished *Salazar* and *Von January* by characterizing the relationship in *Decker* as only an acquaintance through employment. *Id.* at 907. Thus the relationship had no potential for prejudice or bias. *Id.*

We disagree with the State. While it cannot be said, as a matter of law, Ms. Oliver intentionally misled the attorneys during voir dire, her excuse that her confusion was based upon the incorrect age description is suspect since Ms. Wheaton's address was stated. Furthermore, Ms. Wheaton and Ms. Oliver had lived together for four to ten years. They introduced each other as "sister". Ms. Oliver utilized Ms. Wheaton in some manner insofar as income taxes were concerned and paid Ms. Wheaton from the tax refund. This relationship is not as casual as the one in *Decker.*

Based upon *Von January, Salazar* and *Herrera,* the trial court erred in denying the motion for mistrial. The judgment is reversed and remanded for a new trial.

REVERSED AND REMANDED.