11th Court of Appeals
Eastland, Texas
Opinion
 
Michael Paul Vasquez
            Appellant
Vs.                  No. 11-03-00225-CR -- Appeal from Taylor County
State of Texas
            Appellee
 
            The jury convicted Michael Paul Vasquez of murder. Upon a plea of true to the enhancement
allegation, the trial court assessed appellant’s punishment at confinement for 28 years. We affirm. 
            Appellant presents two points of error on appeal. In the first point, he argues that the trial
court erred in admitting into evidence the written statement of an accomplice, Matthew Donnell
Lowry. Appellant contends that the statement was not admissible under TEX.R.EVID. 803(24) and
that the admission of the statement violated his Sixth Amendment right to confront and cross-examine the witnesses against him. Lowry did not testify at appellant’s trial. 
            The record shows that the trial court determined that the statement was admissible as an
exception to the hearsay rule under Rule 803(24) because the statement was sufficiently corroborated
by the evidence to indicate its trustworthiness and because the statement inculpated Lowry. Under
Rule 803(24), a statement subjecting the declarant to criminal liability may qualify as an exception
to the hearsay rule. The Supreme Court, however, has declared that the rights protected by the
Confrontation Clause of the Sixth Amendment are threatened in situations where an accomplice’s
confession, which incriminates both himself and the defendant, is admitted at the trial of the
defendant. Lilly v. Virginia, 527 U.S. 116 (1999). The Supreme Court stated that such confessions
are “inherently unreliable” and that they do not fall within a firmly rooted exception to the hearsay
rule. Lilly v. Virginia, supra at 131 & 134. In Lilly, the accomplice admitted in his confession that
he had participated in the crime spree but that the defendant was the mastermind and the triggerman
in the murder. Lilly v. Virginia, supra at 121. The Lilly Court then determined that the accomplice’s
confession did not satisfy the requirement of “inherent trustworthiness” and held that the trial court
erred in admitting the confession into evidence against the defendant. Lilly v. Virginia, supra at 138. 
            Like the confession in Lilly, there is nothing inherently – without reference to the other
evidence presented at trial – trustworthy about Lowry’s written statement. The statement was given
to police at a time when Lowry had been arrested for the murder of the victim in this case. After
being given the Miranda


 warnings, Lowry made the following statement: 
I was at my house chillin and drinking with Nick. Sometime during the night,
[appellant] came by. He said that he had some problems with a Nigga who had been
f-----g with him. He asked me and Nick to come and go help him handle some s--t
with that Nigga. I didn’t even know the dude he was talking about. 
 
We rode around for a while....We went to the club but I don’t remember much
about the club because I was drunk. After the club, I got in the car with [appellant]
and Nick. We followed my girlfriend home and then we went to that Nigga’s house. 
I don’t remember when we went to pick up the heat, but I think we picked it up before
we went to the club.
 
* * *
 
We all started jogging toward the dude’s house. I don’t remember how I got
the heat in my hand, but it was a black AK-47 rifle. When we got to the dude’s house,
[appellant] and [the victim] went to the back of the house and me and Nick was in the
front. A car pulled up to the stop sign and somebody yelled, “Who the f--k is that?” 
They started dumping on us, so I just started shooting back. I was backing up toward
the alley behind the dude’s house, as I was shooting. I saw [the victim] when he went
down. [The victim] said that he was shot. He was behind me when he went down. 
I don’t see how I could have shot him. Me and [appellant] was trying to help [the
victim] up, but they was still dumping at us. I started shooting at them again, until I
ran out of bullets. Then I took off running....I saw [appellant] drive past me. 
Although the evidence clearly showed that the victim was killed by a bullet that was fired from the
SKS semiautomatic assault rifle possessed by Lowry, Lowry tried to minimize his guilt in his written
statement. Lowry attempted to shift the blame to others for firing the first shots and for firing the fatal
shot that killed the victim. 
            Following Lilly, we hold that the trial court erred in admitting Lowry’s written statement in
violation of appellant’s Sixth Amendment right to confront and cross-examine the witnesses against
him. However, we find that the error is not reversible error under TEX.R.APP.P. 44.2(a). See
Simpson v. State, 119 S.W.3d 262, 268-71 (Tex.Cr.App.2003). Pursuant to Rule 44.2(a), we must
apply a harmless error review and reverse appellant’s conviction unless we determine “beyond a
reasonable doubt that the error did not contribute to the conviction or punishment.” 
            Justin Jerome White, a member of the same gang as the victim and Lowry, testified that
appellant was having some problems with Tony Smith. Appellant told them that he wanted to
“[j]ack” Smith to get back at him. After going to a club, the group went to Smith’s house in two
separate cars. White and the victim rode together. According to White, neither he nor the victim had
a weapon; but Lowry and appellant did. Lowry had the SKS, and appellant had a pistol. After they
arrived at Smith’s house, appellant told everybody where to position themselves in Smith’s yard. 
Shortly thereafter, a car drove up. Somebody from the car yelled: “Who the f--k is that in my
window?” Smith was in the car. While pointing toward Smith, appellant said: “There he is, get him.” 
White then heard a lot of gunshots from different guns. White did not know who owned the SKS,
but he testified that appellant initially had the SKS when he got out of the car. 
            A total of 21 spent shells from the SKS were found at the scene. Police located the SKS in
the backyard of a house down the street – the same address where Lowry had been discovered hiding
in a bush after the shooting. Neighbors testified to hearing gunshots from different types of weapons. 
One of the neighbors had pulled up behind Smith at the stop sign. He saw gunshots being fired from
Smith’s vehicle. 
            Smith’s girlfriend, Misty Tate, testified that she and Smith came home and saw four or five
guys standing outside their house. Smith yelled at the intruders, demanding to know who was in his
yard. Tate then heard someone say: “That’s him. Dump on him.” Tate testified that shots
immediately started “coming from everywhere.” Tate testified that Smith did not fire the first shot. 
            A letter written by appellant was also introduced into evidence. In that letter, appellant stated
that the incident “started off by jacking a fool” but that a white car pulled up and somebody yelled: 
“[W]ho is that?” According to the letter, “[s]hots rang out from the car,” Lowry “let off,” and the
victim was caught “in the cross fire.” In his letter, appellant admitted having a “strap” (gun) in his
pocket. 
            After reviewing the entire record, we have concluded that Lowry’s statement merely
corroborated some of the other witnesses’ testimony and was less damaging than other evidence as
far as appellant’s guilt was concerned. Therefore, following the guidance provided by the Court of
Criminal Appeals under similar circumstances in Simpson, we hold that the error in admitting
Lowry’s written statement into evidence did not contribute to appellant’s conviction or punishment. 
The first point of error is overruled. 
            In his second point of error, appellant contends that the trial court erred in denying his motion
for mistrial because one of the jurors had not been truthful during voir dire about her knowledge of
Tate, a witness for the State. 
            The record shows that Juror Lacresia Stephens discovered after testimony had commenced
in appellant’s trial that she knew Tate. Defense counsel was allowed to question Juror Stephens
outside the presence of the rest of the jury. According to Juror Stephens, Tate was a cousin of Juror
Stephens’s boyfriend. Juror Stephens stated that she knew Tate by a different last name, that she did
not know Tate very well, and that she had no relationship with Tate. Later in the trial, appellant
moved for a mistrial, stating that he would have struck Juror Stephens if she had come forward with
this information during voir dire and also that Juror Stephens had contaminated the rest of the jury. 
            We hold that the trial court did not err in denying appellant’s motion for mistrial. Nothing
in the record suggests that Juror Stephens intentionally gave false information, that the false
information was material, that the jury was contaminated by Juror Stephens, that Juror Stephens was
biased in any way because of her familiarity with Tate, or that Juror Stephens could not be a fair and
impartial juror in this case. See Decker v. State, 717 S.W.2d 903, 907-08 (Tex.Cr.App.1983). 
Appellant’s second point of error is overruled. 
            The judgment of the trial court is affirmed. 
 
May 13, 2004                                                                                     W. G. ARNOT, III 
Do not publish. See TEX.R.APP.P. 47.2(b).                                     CHIEF JUSTICE 
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.