

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00159-CR

_____

JESUS AVITIA TERRAZAS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1868277

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Jesus Terrazas appeals his convictions for continuous sexual abuse of a child under the age of fourteen and indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(d). In one issue, he argues that he "was denied a fair and impartial jury" because, during voir dire, a juror had "failed to disclose that she could not concentrate on the testimony due to her work schedule." Because we conclude that Terrazas was not deprived of an impartial jury or denied a fair trial, we overrule his sole issue and—after correcting a judgment error—affirm the trial court's judgments as modified.

## I. Background[1]

After the complainant outcried to her mother about Terrazas's sexual abuse, Terrazas was charged with one count of continuous sexual abuse of a child (Count 1), two counts of aggravated sexual assault (Counts 2 and 3), two counts of indecency with a child by contact (Counts 4 and 5), and one count of indecency with a child by exposure (Count 6). Following a jury trial, the jury found Terrazas guilty of Counts 1 and 6. The jury assessed his punishment at confinement for life on Count 1 and at ten years' confinement on Count 6, and the trial court sentenced him accordingly. Terrazas timely appealed.

---

[1]Because Terrazas does not raise a sufficiency challenge, we forgo a detailed factual background. There is no reason to lengthen this opinion with a description of the acts of sexual abuse involved in the offenses for which Terrazas was convicted.

## II. Standard of Review[2]

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Under this standard, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Id.*

## III. Applicable Law

An accused in a criminal prosecution has the right to a fair trial by an impartial jury. *See* Tex. Const. art. I, § 10. Included in this constitutional right is the ability to conduct adequate voir dire to identify unqualified jurors. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). "The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested and impartial jury will perform the duty assigned to it." *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978); *see Drake v. State*, 465 S.W.3d 759, 764 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The purpose of the voir dire examination is to expose any bias or interest of the prospective jurors which might prevent full consideration of the evidence . . . ."). Essential to the voir dire process is the right to question venire members to "intelligently exercise peremptory challenges and challenges for cause." *Franklin*, 138 S.W.3d at 354.

---

[2]While Terrazas does not provide the appropriate—or any—standard of review in either his opening brief or his reply brief, at trial, he challenged the juror's ability to serve on the jury by moving for a mistrial, and on appeal, he contends that he is "entitled to a new trial." We therefore apply the standard of review for a trial court's denial of a motion for mistrial.

When a juror withholds material information during voir dire without fault or lack of diligence by the complaining party, the parties are denied the opportunity to exercise challenges, which hampers the selection of an impartial jury. *Id.* at 356–57; *Salazar*, 562 S.W.2d at 482. "That a juror will state that the fact that he withheld information will not affect his verdict is not dispositive of the issue where the information is material and therefore likely to affect the juror's verdict." *Salazar*, 562 S.W.2d at 482. In such a situation, a mistrial may be appropriate. *See Franklin*, 138 S.W.3d at 353–54; *see also Valle-Fernandez v. State*, No. 02-24-00071-CR, 2025 WL 646632, at *6 (Tex. App.—Fort Worth Feb. 27, 2025, no pet.) (mem. op., not designated for publication) ("When a person serves on a jury but is partial, biased, or prejudiced and that juror is selected not through the fault or lack of diligence of defense counsel but based on inaccurate answers in voir dire, a new trial can be obtained."). The burden is initially on the parties to be diligent during voir dire and ask all pertinent questions to reveal potential bias. *Gonzales v. State*, 3 S.W.3d 915, 917–18 (Tex. Crim. App. 1999).

To obtain reversal on an allegation that a juror withheld information during voir dire, the withheld information must have been material. *See Decker v. State*, 717 S.W.2d 903, 907–08 (Tex. Crim. App. 1986) (op. on reh'g) (emphasizing materiality requirement); *Salazar*, 562 S.W.2d at 482 n.5 (clarifying that an appellant is not "entitled to a reversal of his conviction in any case in which he discovers that a juror withheld information during voir dire"). A trial court does not err by denying a

4

motion for mistrial when the withheld information is not material and the record does not show that the defendant was deprived of an impartial jury or denied a fair trial. *Decker*, 717 S.W.2d at 907–08; *see Badger v. State*, No. 02-18-00475-CR, 2019 WL 5089761, at *9 (Tex. App.—Fort Worth Oct. 10, 2019, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause we conclude that no material information was withheld, we further conclude that [appellant] has not shown that he was deprived of an impartial jury or denied a fair trial as a result of any trial court error."); *LeMaster v. State*, No. 04-14-00344-CR, 2015 WL 1640275, at *3 (Tex. App.—San Antonio Apr. 8, 2015, pet. ref'd) (mem. op., not designated for publication) ("[W]e hold [that] the trial court could have determined, in its discretion, the information withheld was not material, and therefore [appellant] was not deprived of his right to an impartial jury or a fair trial."); *cf. Alexander v. State*, No. 02-09-00405-CR, 2010 WL 4138561, at *1 (Tex. App.—Fort Worth Oct. 21, 2010, pet. ref'd) (mem. op., not designated for publication) ("When the withheld information is material, it is constitutional error to deny a motion for mistrial . . . .").

To determine materiality, we evaluate whether the withheld information would have suggested that the juror harbored a bias or prejudice to such a degree that she should have been excused from jury service. *Sypert v. State*, 196 S.W.3d 896, 900 (Tex. App.—Texarkana 2006, pet. ref'd); *see Decker*, 717 S.W.2d at 907 (concluding that withheld information was not material when there was no showing that it "had any potential for prejudice or bias"); *Ford v. State*, 129 S.W.3d 541, 547 (Tex. App.—Dallas

5

2003, pet. ref'd) (noting that "[i]t is not the mere failure to disclose information that warrants a new trial" but "the chance that a biased individual came to serve [on the jury] through silence or deception"). The withheld information need not show "actual bias; just that it has a tendency to show bias." *Franklin*, 138 S.W.3d at 356. If the withheld information touches on a fundamental component of the charged offense or a personal characteristic of the defendant, then the withheld information was material to voir dire's objective of eliciting a venire member's potential bias or prejudice. *Sypert*, 196 S.W.3d at 901 (providing examples of material information).

## IV. Discussion

Terrazas contends that he was "denied a fair and impartial jury" because during voir dire, a juror—A. Affleck—withheld material information about her inability to concentrate on the evidence due to her "scheduling conflict." According to Terrazas, had Affleck disclosed this information, he would have used one of his peremptory challenges to strike her. He argues that he is entitled to a new trial because he was "prejudiced" by Affleck's failure to disclose the information.

### A. The Relevant Record

During voir dire, Terrazas asked the venire members about scheduling conflicts that would interfere with their ability to serve on the jury. Multiple venire members indicated that they would likely have conflicts with their work schedules. Juror Affleck did not voice any scheduling conflicts at that time.

6

At the end of voir dire, twelve jurors and one alternate were selected and sworn. After the jury was sworn, Affleck notified the bailiff that she was a hospice nurse, that she worked overnight shifts, and that she usually slept during the day.

During pretrial matters the next morning, another juror was excused without objection due to illness, and the alternate took her place. The trial court then relayed to the parties what Affleck had shared with the bailiff about her work schedule. Terrazas asked the trial court to inquire as to whether Affleck had worked the previous night. Affleck told the trial court that she had worked the previous night and had slept for only three hours, that she was scheduled to work each night that week, and that she could not miss work because she provided end-of-life care to a patient who could "pass at any time." The trial court asked Affleck if she could uphold her oath to listen to the case and render a verdict on the law and evidence, and she responded that she would "try."

Terrazas requested that Affleck be excused from the jury, arguing that she was unable to serve—as opposed to disqualified or exempt—due to her "sleep deprivation." After a brief recess, the trial court offered to modify the trial schedule to allow Affleck to "get some sleep." It asked Affleck if the modification would allow her to fully participate and "give this case the time and attention it deserve[d]." Affleck again stated that she would try. Looking for a more "confident" assurance that she could "give the State and [Terrazas] a fair trial," the trial court asked Affleck if, for at least that day, she could "give this case the time and attention it needed"

7

from 10:15 a.m. until 3:00 p.m. Affleck stated that she could, and the trial court instructed her to tell the bailiff if she had any issues paying attention.

Terrazas then took Affleck on voir dire. In response to Terrazas's questioning, Affleck indicated that she did not think that Terrazas would get a fair trial from her because her patient was her priority. The trial court asked Affleck to clarify what she meant by that, and she stated that her mind was "in other places." The trial court assured Affleck that it was not asking her to "forget about" her "life outside th[e] courtroom" but that "ultimately, the question [wa]s, c[ould she] listen to the evidence and return a verdict based on the law and the evidence?" Affleck answered, "Yes."

Despite Affleck's answer, Terrazas re-urged his argument that Affleck was unable to uphold her duties as a juror. He also requested a mistrial "because there [wa]s no available alternative juror to step in" and Affleck was "disabled." He then asserted that, had he heard the information about Affleck's schedule during voir dire, he would have "let her go" and used one of his strikes against her. The trial court found that Affleck had "not reached the level of disability" and allowed her to continue serving on the jury.

During the first day of trial, Terrazas informed the trial court that Affleck had been falling asleep during a witness's testimony. The trial court asked the bailiff to check in with Affleck to ensure that she had been listening to the testimony and to make sure that she could continue for the rest of the day. Terrazas again moved for a mistrial based on Affleck's inability to perform her duties, and the trial court took it

8

under advisement, indicating that it would "keep[] a close eye on" Affleck. At the close of testimony that day, the trial court offered—for the second time—to modify the trial schedule to accommodate Affleck's work and sleep, and she asserted that it would be best to start in the morning.

Terrazas took Affleck on another voir dire and asked her if she had fallen asleep at any point during the testimony that day. Affleck stated that she had laid her head in her hand but had not fallen asleep. Terrazas asked Affleck if her mental state or sleep deprivation had impacted her ability to listen to the evidence or had influenced her ability to render a verdict, and she answered, "No." The trial court then noted that Terrazas's mistrial motion was still under advisement and instructed everyone to return the next morning at 8:30 a.m.

Affleck sat through two more days of trial testimony without any further issues, concerns, objections, or motions regarding her ability to pay attention and listen to the evidence. At the charge conference, however, Terrazas stated that he still had an "ongoing concern" that Affleck had not been "forthcoming with her ability to pay attention to the evidence, based on her physical demeanor and appearance." Terrazas urged his motion for mistrial based on this "ongoing concern" of Affleck's "ability to pay attention, listen to the evidence, . . . actively engage in deliberation," and render a "true verdict."

The trial court denied Terrazas's motion for mistrial. Explaining its reasoning, it stated that it

9

accepts [Affleck's] representations that she's been able to listen to the evidence. The first day, we did break early, but she represented to the [c]ourt that she heard all of the evidence. The jury has been instructed each time they come into the courtroom to notify the [c]ourt or the bailiffs if at any point they need a break or need any accommodations to help them in focusing. We have been taking breaks and finished early yesterday in order to ensure that she could listen to the evidence, and she has given the [c]ourt confidence that she can follow her oath.

After the trial court denied his motion, Terrazas noted that, had he had the information regarding Affleck's schedule prior to the jury's being sworn, either Affleck would have been excused or he would have used one of his peremptory strikes against her, and a different panel would have been seated.

## B. Analysis

While Affleck may not have disclosed the information about her work schedule during voir dire, the information was not material. The fact that Affleck worked overnight providing hospice care to a patient who could "pass at any time" did not suggest that she was biased or prejudiced against Terrazas, nor did the fact that she had slept for only three hours the night before the first day of trial. Affleck's alleged scheduling conflict did not touch on the charged offenses—continuous sexual abuse of a child under the age of fourteen and indecency with a child by exposure—or on any personal characteristic of Terrazas, and it had no connection to any of the witnesses, attorneys, or court staff involved in this case.

Affleck's alleged scheduling conflict did not have even a tendency to show bias; thus, the information was not material. *See Decker*, 717 S.W.2d at 907 (concluding that

10

withheld information was not material because it did not show potential for bias or prejudice); *Alexander*, 2010 WL 4138561, at \*1, \*2 (overruling appellant's contentions that a juror withheld material information during voir dire and that it "affected his opportunity to intelligently exercise his peremptory challenges"; nothing in the record showed that the information revealed a potential bias or prejudice); *Ford*, 129 S.W.3d at 549 ("[T]he information was not 'material' because it was not of the type 'suggesting potential for bias or prejudice.'"); *cf. Franklin*, 138 S.W.3d at 352, 355 (holding that withheld information was material when juror revealed that she was the child-sexual-assault victim's Girl Scout troop leader and that her daughter was in the same Girl Scout troop as the victim); *Salazar*, 562 S.W.2d at 482–83 (holding that withheld information was material because defendant was a Mexican-American male charged with indecency with a child and juror failed to disclose that he had witnessed the sexual assault of his daughter by a Mexican-American male and had testified at the trial for that sexual assault); *Araujo v. State*, No. 13-12-00042-CR, 2013 WL 2146818, at \*4 (Tex. App.—Corpus Christi–Edinburg May 16, 2013, no pet.) (mem. op., not designated for publication) (concluding that withheld information—that juror was related to a State's witness and that the witness had shared facts about the case with him—was material); *Sypert*, 196 S.W.3d at 901 (concluding, in robbery case, that juror's withholding information that his brother had previously been robbed was material and directly impacted appellant's right to an impartial jury).

11

Terrazas contends that "the question of bias is irrelevant." He asserts that he "is not alleging bias" but that he "had concerns over [Affleck's] ability to pay attention[,] which is of paramount importance in evaluating prospective jurors." But the question of bias is precisely what we must evaluate when determining whether the withheld information was material. *See Franklin*, 138 S.W.3d at 356; *Decker*, 717 S.W.2d at 907; *Sypert*, 196 S.W.3d at 900; *Ford*, 129 S.W.3d at 547. Terrazas cites no case law—and we have found none—that would permit us to replace that materiality standard with one in which the withheld information need merely raise concerns over a juror's ability to pay attention.[3] *Cf. Hogue v. State*, 629 S.W.3d 731, 734 (Tex. App.—Beaumont 2021, no pet.) ("[N]either the text of the Sixth Amendment, nor the text of Article I, section 10 of the Texas Constitution, create rights allowing defendants to have jurors with perfect hearing or to have jurors who remain alert and attentive throughout trial."). And he otherwise fails to support his conclusory assertion that an alleged scheduling conflict constitutes material information that, when withheld during voir dire, warrants a new trial.

Because the information about Affleck's schedule was not material, the record does not show that Terrazas was deprived of an impartial jury or denied a fair trial. *See*

---

[3]To the extent that Terrazas attempts to conflate the materiality determination with a harm analysis, *see* Tex. R. App. P. 44.2(a); *Franklin*, 138 S.W.3d at 355, because we conclude that the information was not material, we do not reach a harm analysis. *See Sypert*, 196 S.W.3d at 900 ("[I]f a situation arises where *material* information was withheld . . . , and if the appellant's subsequent motion for mistrial is denied, on appeal the denial of that motion will be reviewed for constitutional error."); *see also* Tex. R. App. P. 47.1.

*Decker*, 717 S.W.2d at 907–08; *Badger*, 2019 WL 5089761, at *9; *LeMaster*, 2015 WL 1640275, at *3; *cf. Salazar*, 562 S.W.2d at 482 (holding that trial court erred by not granting mistrial "when it became known that the information withheld by the juror was material"). Accordingly, we hold that the trial court did not abuse its discretion by denying Terrazas's motion for mistrial. We overrule Terrazas's sole issue.

## C. Judgment Error

The trial court's judgment on Count 1 contains an error in its recitation of Terrazas's punishment. We have the authority to correct errors in a judgment to make the judgment comport with the trial court record. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Ette v. State*, 551 S.W.3d 783, 792 (Tex. App.—Fort Worth 2017), *aff'd*, 559 S.W.3d 511 (Tex. Crim. App. 2018). This authority is not dependent upon the request of any party, nor is it dependent upon whether the party preserved error in the trial court. *Ette*, 551 S.W.3d at 792.

Here, the jury's verdict and the trial court's oral pronouncement of Terrazas's punishment on Count 1 were for a sentence of "life." But the judgment lists Terrazas's punishment incorrectly as "life without parole." *See* Tex. Penal Code Ann. § 21.02(h) ("An offense under this section is a felony of the first degree, punishable by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years."); *Colburn v. State*, 966 S.W.2d 511, 516 (Tex. Crim. App. 1998) ("[A] life sentence does not mean life without parole."); *Smith v. State*, No. 14-24-00149-CR, 2026 WL 468007, at *5 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, pet. filed)

(modifying judgment by deleting "without parole" to reflect jury's verdict of "life" for continuous-sexual-abuse-of-a-child conviction); *Sosa v. State*, No. 05-19-00868-CR, 2021 WL 1084639, at *6–7 (Tex. App.—Dallas Mar. 22, 2021, pet. ref'd) (mem. op., not designated for publication) (similar).

We note that Terrazas is ineligible for parole because he is serving a sentence for continuous sexual abuse of a child. *See* Tex. Gov't Code Ann. § 508.145(a)(2) (providing that an inmate is not eligible for release on parole if serving a sentence for an offense under Section 21.02). Nevertheless, the judgment's recitation of Terrazas's punishment is incorrect because the jury did not assess his punishment at "life without parole" and such punishment is not authorized by the Texas Penal Code. *See* Tex. Penal Code Ann. § 21.02(h); *see, e.g.*, *Smith*, 2026 WL 468007, at *5 (citing cases holding the same and also explaining that, while parole is not available for the offense of continuous sexual abuse of a child because of applicable parole laws, the Texas Penal Code does not authorize life without parole as a sentence for this offense); *see also* Tex. Penal Code Ann. § 12.31(a)(2) (authorizing sentence of life without parole for certain capital-felony convictions), § 12.42(c)(4) (describing conditions for life-without-parole sentence for certain habitual offenders), § 71.02(b)(1) (describing when life-without-parole sentence is authorized for organized crimes).

Accordingly, we modify the trial court's judgment on Count 1 to reflect the jury's verdict and the trial court's pronouncement by striking the phrase "without parole" from the judgment's recitation of Terrazas's punishment.

## V. Conclusion

We affirm the Count 6 judgment as is, modify the Count 1 judgment by deleting the phrase "without parole" under "Punishment and Place of Confinement," and affirm that judgment as modified.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 30, 2026