TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00729-CR






Jaime Dominguez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-94-0312-S, HONORABLE BARBARA WALTHER, JUDGE PRESIDING






PER CURIAM


 A two-count indictment accused appellant of burglary of a habitation and theft of property
having a value of $750 or more. As to count one, a jury found appellant guilty as charged and assessed
punishment, enhanced by two previous felony convictions, at imprisonment for fifty years. Penal Code, 63d
Leg., R.S., ch. 399, sec. 1, § 30.02, 1973 Tex. Gen. Laws 883, 926 (Tex. Penal Code Ann. § 30.02,
since amended). On count two, the jury convicted appellant of the lesser included offense of theft of
property having a value of $200 or more and assessed a $3000 fine. Act of May 27, 1985, 69th Leg.,
R.S., ch. 599, § 1, 1985 Tex. Gen. Laws 2244, amended by Act of May 10, 1993, 73d Leg., R.S., ch.
203, § 4, 1993 Tex. Gen. Laws 390, 391-92 (Tex. Penal Code Ann. § 31.03(a), (e)(3)(A), since
amended). We will affirm.




1.  Competence

 Before appellant's trial on the indictment, a separate jury was empaneled to determine
appellant's competence to stand trial. See Tex. Code Crim. Proc. Ann. art. 46.02 (West 1979 & Supp.
1997). A person is incompetent to stand trial if he does not have sufficient present ability to consult with
his lawyer with a reasonable degree of rational understanding or if he does not have a rational and factual
understanding of the proceedings against him. Id., § 1(a). The defendant bears the burden of proving
incompetence by a preponderance of the evidence. Id., § 1(b). Appellant contends the jury's finding that
he was competent was against the great weight and preponderance of the evidence. See Meraz v. State,
785 S.W.2d 146, 155 (Tex. Crim. App. 1990) (standard of review).

 A psychologist, Dr. Jarvis Wright, was appointed by the district court to examine appellant
regarding his competence to stand trial. Called by the defense, Wright testified that appellant displayed the
symptoms of a paranoid personality disorder. Nevertheless, Wright was of the opinion that appellant had
a rational and factual understanding of the proceedings against him. Wright further opined that appellant
had the present ability to consult with his attorneys with a reasonable degree of rational understanding. 
With respect to the latter issue, Wright distinguished between appellant's ability to consult with his attorneys
and his willingness to do so. Wright testified, "Oh, I think he's a very ornery, uncooperative, suspicious
person . . . . I think there's a very strong probability he'll choose not to cooperate, but it will be a choice
. . . and not a function of some kind of overwhelming mental illness that makes it where he cannot . . . ."

 Phillip McClure, the first attorney appointed to represent appellant, and Duke Hooten, one
of the attorneys appointed to replace McClure, testified to appellant's distrust of attorneys and lack of
cooperation. McClure was of the opinion that appellant was unable to cooperate "because of his paranoia,
because of his belief that there was a general conspiracy against him." Hooten testified that appellant "is
so obsessed with the fear that he's being sent up the river that . . . you cannot get him to talk about anything
else." Employees of the Tom Green County jail called by the State testified that appellant generally
displayed a hostile and belligerent attitude, but could be polite and articulate when he wanted something.

 Having considered all the evidence adduced at the hearing, we conclude that the finding
of competence was not so contrary to the great weight and preponderance of the evidence as to be clearly
wrong or manifestly unjust. Point of error seven is overruled.


2.  Sufficiency of evidence

 San Angelo police officer William Jones was at home on the afternoon of March 10, 1994,
when his attention was drawn to a white pickup truck driving slowly past his house. The truck stopped
several houses down the street and a man got out. The man walked into the open garage of Jones's
neighbor, Grant Frazier, then rode out on a bicycle. The man rode the bicycle to the pickup, put the
bicycle into the truck bed, and reentered the vehicle, which then drove away. Jones followed the pickup
in an unmarked car while calling for assistance. The pickup was eventually stopped. The driver, Thomas
Ludlow, and the passenger, appellant Jaime Dominguez, were arrested. Jones identified appellant as the
man who entered Frazier's garage and took the bicycle. Frazier testified that appellant did not have his
consent to enter.


 Ludlow testified for the State and confirmed Jones's testimony regarding the Frazier
burglary. Ludlow also testified that he was acquainted with James Bishop, a dealer in used property. 
Ludlow stated that in February 1994, he and appellant went to Bishop's business hoping to borrow money. 
Finding the business closed, Ludlow and appellant loaded an air compressor, an auger, several tires, and
miscellaneous hand tools belonging to Bishop into Ludlow's truck. They subsequently sold or pawned this
property. Bishop testified that Ludlow and appellant did not have his permission to take these items and
identified photographs of the stolen property. Bishop testified that the air compressor was worth two
hundred dollars.

 Appellant does not challenge the sufficiency of the evidence with respect to the burglary,
but contends the evidence is insufficient to sustain his conviction for theft because Ludlow's accomplice
testimony was not corroborated. A conviction cannot be had on the testimony of an accomplice unless the
testimony is corroborated by other evidence tending to connect the defendant to the offense. Tex. Code
Crim. Proc. Ann. art. 38.14 (West 1979). The corroborating testimony need not directly link the defendant
to the crime or be sufficient in itself to establish guilt. Tolley v. State, 717 S.W.2d 334, 336 (Tex. Crim.
App. 1986). The corroboration is sufficient if it tends to link the defendant with the commission of the
offense. Id. at 335.

 Stephen Hale, manager of a San Angelo pawn shop, testified that he purchased an air
compressor from Ludlow and appellant on February 16, 1994. Before he purchased the compressor,
appellant started it to demonstrate that it was in working condition. Hale identified the photograph of
Bishop's air compressor as the compressor he purchased from appellant and the accomplice. Hale's
testimony establishing appellant's possession of the recently stolen property was sufficient to corroborate
the accomplice testimony. Id. at 336. Point of error nine is overruled.

 Appellant also contends the State failed to establish venue for the theft, noting the absence
of any testimony that Bishop's business was located in Tom Green County. If property is stolen in one
county and removed by the offender to another county, the offender may be prosecuted either in the county
where he took the property or in any other county through or into which he took the property. Tex. Code
Crim. Proc. Ann. art. 13.08 (West 1977). Hale testified that the pawn shop where appellant and Ludlow
sold the stolen property was in Tom Green County. This was sufficient to establish venue in Tom Green
County even if the property had been stolen elsewhere. Point of error ten is overruled.


3.  Sanity

 Appellant's defense was insanity. It is an affirmative defense to prosecution that, at the time
of the conduct charged, the defendant, as a result of severe mental disease or defect, did not know that his
conduct was wrong. Tex. Penal Code Ann. § 8.01 (West 1994). As with incompetence to stand trial, the
defendant must prove his insanity by a preponderance of the evidence. Tex. Penal Code Ann. § 2.04(d)
(West 1994). Appellant contends the jury's failure to find him not guilty by reason of insanity was against
the great weight and preponderance of the evidence. See Meraz, 785 S.W.2d at 155.

 Dr. Paul Buechel, a neurologist, interviewed appellant and examined his medical records
one week before appellant's trial. From the records, Buechel learned that appellant sustained permanent
brain damage as a result of a gunshot to the head in 1990. Several months after being shot, appellant began
to have epileptic seizures and was placed on an antiseizure medication. Buechel testified that persons with
epilepsy sometimes experience a "twilight state," "a period of time which can go on for hours, days, weeks,
occasionally even months, in which people with poorly controlled seizures continue to have these at
intervals every half-hour, every couple of hours and continuing throughout, having several seizures a day." 
Buechel testified that a person in such a state may appear to be functioning normally, and that he had seen
people in a twilight state "walking around, . . . obeying commands, doing things that look like they're normal
and awake . . . ." Buechel said that a twilight state "is certainly not the most common type of seizure we
see" and usually occurs in people who have stopped taking antiseizure medication.

 Appellant told Buechel that he ran out of his medication five days before the Frazier
burglary and experienced seizures throughout the days of February 9 and 10, 1994. Appellant also told
Buechel that he could not remember going into the garage, but had a vague memory of riding a bicycle. 
Buechel testified that based on what appellant told him, it was possible that appellant was undergoing an
epileptic seizure when he entered the Frazier garage and stole the bicycle. If so, said Buechel, he would
not have been able to determine that his actions were wrong.

 During cross-examination, Buechel acknowledged that he had not been appellant's treating
physician and knew nothing about the events of February 10, 1994, other than what appellant told him. 
Buechel did not talk to anyone who might have been with appellant on that date to confirm appellant's
statements. Buechel said that he had never before encountered a case in which someone claimed to have
committed a theft while undergoing an epileptic seizure.

 Dr. Jarvis Wright, the psychologist who testified at the competency hearing, was called by
the State in rebuttal. Wright testified that it was common for a person accused of a crime to feign
psychological, psychiatric, or medical excuses in order to escape punishment.

 The jury was the exclusive judge of the credibility of the witnesses and the weight to be
given their testimony, and was free to accept or reject all or any part of the evidence. Miller v. State, 909
S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). The State was not required to introduce affirmative
controverting evidence to rebut the defensive theory. Johnson v. State, 571 S.W.2d 170, 173 (Tex.
Crim. App. 1978). Even when viewed most favorably to appellant, Buechel's testimony established only
that it was possible appellant was experiencing an epileptic seizure when he stole the bicycle. The jury's
rejection of the insanity defense was not so against the great weight and preponderance of the evidence as
to be manifestly wrong and unjust. Point of error eight is overruled.


4.  Pretrial motions

 Appellant contends the district court erroneously overruled his motion to quash the theft
count of the indictment, which alleged that he unlawfully appropriated "an air compressor, tires, and tools"
from Bishop. In his motion to quash, appellant complained that the indictment did not specify the number
and kind of tires, or the name, kind, and number of tools, allegedly appropriated.

 Personal property alleged in an indictment must be identified by name, kind, number, and
ownership, if that information is known. Tex. Code Crim. Proc. Ann. art. 21.09 (West 1989). In Moore
v. State, 473 S.W.2d 523 (Tex. Crim. App. 1971), the indictment alleged that the defendant stole "tires." 
The Court of Criminal Appeals held that this was not an adequate description under article 21.09 and that
the defendant's motion to quash should have been granted.

 Assuming the district court erred by overruling appellant's motion to quash the theft count,
the question remains whether the inadequate description of the stolen property prejudiced appellant's
substantial rights. See Adams v. State, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). Appellant makes
no effort to demonstrate prejudice in his brief. Appellant's sole defense was insanity and he did not deny
committing the alleged theft. The jury appears to have given little weight to the stolen tires and tools, as
they convicted appellant of the lesser included offense of misdemeanor theft. Finding no evidence of
prejudice to appellant's substantial rights, we overrule point of error two.

Appellant also complains of the overruling of his motion to dismiss the prosecution based on alleged
prosecutorial vindictiveness. The motion noted that appellant's accomplice, Ludlow, pleaded guilty to theft
in exchange for a seven-year sentence. Appellant, on the other hand, had been offered a thirty-five-year
sentence if he would plead guilty to burglary. In his motion, appellant alleged that he was offered a harsher
plea bargain because he had filed a federal civil rights lawsuit against the San Angelo police department.

 At the hearing on appellant's motion to dismiss, the district attorney testified that he was
unaware of the civil rights suit when he made the plea bargain offer. He attributed the differences in the plea
bargains offered to Ludlow and appellant to their different criminal histories. Ludlow had a record of nine
arrests, with one felony conviction for which he received a probated sentence. Appellant had a record of
forty arrests, with at least two felony convictions for which he was sent to the penitentiary. At the
conclusion of the hearing, the district court stated that "the State has established to the Court's satisfaction
that they were not aware of the civil rights suits and/or claims for damages that are alleged to be the basis
for the vindictiveness." The record supports the court's finding of fact. No error is shown in the overruling
of the motion to dismiss. Point of error three is overruled.


5.  Counsel

 Scott McClure, the attorney first appointed to represent appellant, moved to withdraw
citing appellant's refusal to cooperate with him. At a hearing on November 1, 1994, McClure told the
court that his discussions with appellant "usually end up in a yelling match" and that their relationship had
"deteriorated to a point where I can no longer effectively communicate" with appellant. In response,
appellant called McClure a liar but stated that he desired him to remain as his counsel. The court took no
action on the motion.

 On January 9, 1995, McClure again brought his motion to withdraw to the court's
attention. Counsel repeated that his meetings with appellant had become "yelling matches" and confessed
that he found it difficult to maintain his objectivity with respect to the case. Counsel said, "I can't--you
know, he wants this done, this done and this done. Some things that he asks for are impossible. . . . I
cannot represent Mr. Dominguez anymore." Appellant stated that he was satisfied with McClure. The
court, with obvious reluctance, granted the motion to withdraw. Appellant urges that granting counsel's
motion to withdraw was error.

 Appellant relies on the opinion in Stearnes v. Clinton, 780 S.W.2d 216 (Tex. Crim. App.
1989). In that case, the trial court removed appointed counsel over the objection of both counsel and the
defendant after the attorney interviewed State witnesses without the permission of the prosecutor. The
Court of Criminal Appeals observed that a trial court does not have the inherent power to remove
appointed counsel. Id. at 223. The constitutional right to counsel of one's choice means that an attorney
appointed to represent a defendant may not be removed over the defendant's objection absent a showing
of a serious conflict of interest or incompetence. Id. Calling the trial court's justifications for removing
counsel "both illogical and unreasoned," the Court of Criminal Appeals held that the trial court had abused
its discretion and ordered the reinstatement of the original attorney. Id. at 224, 226.

 Also instructive is the opinion in Wheat v. United States, 486 U.S. 153 (1988). Wheat,
one of the codefendants in a federal conspiracy prosecution, requested permission to substitute as counsel
another lawyer already representing another codefendant. The district court found a serious potential for
conflict of interest and overruled the motion to substitute counsel, even after both Wheat and the
codefendant waived the potential conflict. On appeal, the defendant complained that the district court had
denied him his constitutional right to his counsel of choice. The Supreme Court wrote:


[W]hile the right to select and be represented by one's preferred attorney is
comprehended by the Sixth Amendment, the essential aim of the Amendment is to
guarantee an effective advocate for each criminal defendant rather than to ensure that a
defendant will inexorably be represented by the lawyer whom he prefers.



Id. at 159. Although courts "must recognize a presumption in favor of [a defendant's] counsel of choice,
. . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of
a serious potential for conflict." Id. at 164. The Supreme Court concluded that the district court did not
abuse its discretion by refusing to permit the substitution of counsel.

 The record before us clearly reflects that McClure's patience with appellant was exhausted. 
Appellant's demands and lack of cooperation had seriously compromised counsel's ability to fairly and
objectively represent appellant's interests. While the district court was obligated to respect the attorney-client relationship, that court also had the obligation to ensure that appellant received effective
representation. Id. at 159. We believe that when the attorney-client relationship deteriorates into "yelling
matches" and name-calling, and where the record supports the conclusion that appointed counsel lacks the
ability to fairly and effectively represent the defendant, a trial court is authorized to replace counsel in order
to ensure effective representation, even if the defendant objects to the substitution. The district court did
not abuse its discretion by granting McClure's motion to withdraw. Point of error six is overruled.

 Rae Leifeste and Duke Hooten were appointed to take McClure's place as defense
counsel. In April 1995, appellant filed a pro se motion expressing his dissatisfaction with Hooten and
asking for new counsel. Later that month, Leifeste and Hooten moved to withdraw. In their motion,
counsel said they had received a letter from appellant stating that he no longer wanted them to represent
him and that appellant had instructed them to stop visiting him in jail. At a hearing on the motion to
withdraw, Leifeste informed the district court that appellant "will not talk to us about the case" and "we
don't feel like we can prepare a defense if he won't talk to us." After securing appellant's agreement to
meet with counsel and discuss the case with them, the court overruled the motion to withdraw. The court
told appellant that his motion for new counsel was overruled "because I am not going to allow you to
continue to just go through counsel after counsel after counsel, in a case that is getting extremely old, just
because you want to be obstinate and stubborn and not work with the attorneys." Appellant contends the
court erred by overruling his pro se motion for new counsel without a hearing. See Melendez v. Salinas,
895 S.W.2d 714 (Tex. App.--Corpus Christi 1994, no pet.).

 Although the district court's hearing was primarily concerned with counsel's motion to
withdraw, appellant's corresponding pro se motion for new counsel was also considered and overruled. 
Appellant does not challenge the merits of the district court's refusal to appoint substitute counsel. The
district court was not obligated to search for an attorney who met with appellant's approval and the
appointment of new counsel was solely within the court's discretion. Solis v. State, 792 S.W.2d 95, 100
(Tex. Crim. App. 1990). The selection of counsel cannot be manipulated so as to obstruct orderly court
procedure. Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). The Court of Criminal
Appeals has historically affirmed a trial court's decision refusing a motion to dismiss appointed counsel. 
Malcom v. State, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982). Finding no abuse of discretion, we
overrule point of error five.

 Appellant has filed a pro se supplemental brief in which he contends he received ineffective
assistance of counsel at trial. We have reviewed appellant's contentions and find no support for them in
the record. The pro se supplemental point of error is overruled.


7.  Other points of error

 Appellant contends the district court erred by failing to include the statutory instruction on
the law of good time and parole in its punishment charge. Tex. Code Crim. Proc. Ann. art. 37.07, § 4
(West Supp. 1997). Appellant concedes that he did not object to the court's failure to give the statutory
instruction, but asserts that the error cannot be waived and requires reversal without a showing of harm.

 An erroneous or incomplete jury charge does not result in automatic reversal of a
conviction. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). When reviewing charge
errors, the appellate court must undertake the two-step review outlined in Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985) (opinion on rehearing). Id. Under Almanza, when charge error is urged
for the first time on appeal, reversal is required only if the error resulted in egregious harm to the accused. 
Almanza, 686 S.W.2d at 171. We do not believe that article 37.07, section 4 creates an absolute
systemic requirement that is not subject to harm analysis. See Matchett v. State, 941 S.W.2d 922, 928
(Tex. Crim. App. 1996) (disavowing suggestion in prior opinion that harm analysis inappropriate when
mandatory statute is violated). But cf. Reyes v. State, 938 S.W.2d 718, 721 (Tex. Crim. App. 1996)
(failure to give reasonable doubt instruction is automatic reversible error).

 The punishment charge included this instruction: "During your deliberations in this matter
and in arriving at your verdict on punishment YOU MUST NOT CONSIDER, DISCUSS OR RELATE
how long this defendant would be required to serve in prison in order to satisfy a sentence." During the
hearing on appellant's motion for new trial, the jury foreman testified that there was no discussion of parole
during deliberations. He testified that one juror "attempted to mention that the full sentence may not be
served," but he "stopped her as jury foreman and said we can't discuss that." Appellant does not argue
in his brief that he suffered any harm, much less egregious harm, as a result of the district court's failure to
include the statutory instruction. Finding no evidence of egregious harm, we overrule point of error one.

 Appellant's remaining point of error asserts that the district court erred by refusing to
declare a mistrial based on juror misconduct. During voir dire, defense counsel asked the panelists if they
knew the complaining witnesses. Later, during trial, one of the jurors informed the district court that she
realized after seeing him that she knew James Bishop. The juror, Priscilla Morgan, told the court that
Bishop used to work for her father, that she and he were not friends, and that her acquaintance with Bishop
would not affect her ability to be a fair and impartial juror. Defense counsel moved for a mistrial on the
ground that Morgan had failed to disclose this information during voir dire. Counsel stated that the inquiry
had been made "to determine if there was anyone that had any relationship to any of the complainants. And
it was our position that if we discovered anyone that had any relationship to them at all, that we would use
a peremptory strike on that individual." Counsel complained that "we were unable to utilize one of our
peremptory strikes on that juror." The district court refused to grant the requested mistrial, noting that the
defense did not strike another juror, Candace Escobedo, even though she stated during voir dire that she
was acquainted with the other complainant, Grant Frazier. We review the district court's ruling for an
abuse of discretion. State v. Daniels, 761 S.W.2d 42,44 (Tex. App.--Austin 1988, pet. ref'd).

 In Salazar v. State, 562 S.W.2d 480 (Tex. Crim. App. 1978), relied on by appellant, a
venire member who served on the jury deliberately withheld material information during voir dire, that is,
information that showed a potential for prejudice or bias on the part of the juror. In Vaughn v. State, 833
S.W.2d 180 (Tex. App.--Dallas 1992, pet. ref'd), also cited by appellant, a juror told the court after trial
began that she knew the defendant and could not be fair and impartial. Both of these cases are
distinguishable from the cause before us. The venire member did not deliberately fail to disclose her
relationship with the complainant, and that relationship was not shown to be a material fact with potential
for bias or prejudice.

 This cause more closely resembles Decker v. State, 717 S.W.2d 903, 906 (Tex. Crim.
App. 1986) (opinion on rehearing). In that case, a juror realized after trial began that he was acquainted
with the complaining witness by having worked on the same job site. The juror immediately informed the
trial court. The juror assured the court that his acquaintance with the complainant would not affect his
consideration of the evidence. Finding that the juror's relationship with the complainant was not material
and had not been deliberately withheld, the Court of Criminal Appeals held that the trial court did not abuse
its discretion by refusing to remove the juror or declare a mistrial.

 As in Decker, the venire member in this cause did not deliberately fail to disclose her
relationship with the complainant, and the undisclosed information was not shown to have any potential for
bias or prejudice on the part of the juror. The district court did not abuse its discretion by refusing to
declare a mistrial. Point of error four is overruled.

The judgment of conviction is affirmed.


Before Justices Powers, Jones and Kidd

Affirmed

Filed: June 5, 1997

Do Not Publish



ruction is automatic reversible error).

 The punishment charge included this instruction: "During your deliberations in this matter
and in arriving at your verdict on punishment YOU MUST NOT CONSIDER, DISCUSS OR RELATE
how long this defendant would be required to serve in prison in order to satisfy a sentence." During the
hearing on appellant's motion for new trial, the jury foreman testified that there was no discussion of parole
during deliberations. He testified that one juror "attempted to mention that the full sentence may not be
served," but he "stopped her as jury foreman and said we can't discuss that." Appellant does not argue
in his brief that he suffered any harm, much less egregious harm, as a result of the district court's failure to
include the statutory instruction. Finding no evidence of egregious harm, we overrule point of error one.

 Appellant's remaining point of error asserts that the district court erred by refusing to
declare a mistrial based on juror misconduct. During voir dire, defense counsel asked the panelists if they
knew the complaining witnesses. Later, during trial, one of the jurors informed the district court that she
realized after seeing him that she knew James Bishop. The juror, Priscilla Morgan, told the court that
Bishop used to work for her father, that she and he were not friends, and that her acquaintance with Bishop
would not affect her ability to be a fair and impartial juror. Defense counsel moved for a mistrial on the
ground that Morgan had failed to disclose this information during voir dire. Counsel stated that the inquiry
had been made "to determine if there was anyone that had any relationship to any of the complainants. And
it was our position that if we discovered anyone that had any relationship to them at all, that we would use
a peremptory strike on that individual." Counsel complained that "we were unable to utilize one of our
peremptory strikes on that juror." The district court refused to grant the requested mistrial, noting that the
defense did not strike another juror, Candace Escobedo, even though she stated during voir dire that she
was acquainted with the other complainant, Grant Frazier. We review the district court's ruling for an
abuse of discretion. State v. Daniels, 761 S.W.2d 42,44 (Tex. App.--Austin 1988, pet. ref'd).

 In Salazar v. State, 562 S.W.2d 480 (Tex. Crim. App. 1978), relied on by appellant, a
venire member who served on the jury deliberately withheld material information during voir dire, that is,
information that showed a potential for prejudice or bias on the part of the juror. In Vaughn v. State, 833
S.W.2d 180 (Tex. App.--Dallas 1992, pet. ref'd), also cited by appellant, a juror told the court after trial
began that she knew the defendant and could not be fair and impartial. Both of these cases are
distinguishable from the cause before us. The venire member did not deliberately fail to disclose her
relationship with the complainant, and that relationship was not shown to be a material fact with potential
for bias or prejudice.

 This cause more closely resembles Decker v. State, 717 S.W.2d 903, 906 (Tex. Crim.
App. 1986) (opinion on rehearing). In that case, a juror realized after trial began that he was acquainted
with the complaining witness by having worked on the same job site. The juror immediately informed the
trial court. The juror assured the court that his acquaintance with the complainant would not affect his
consideration of the evidence. Finding that t