Daniel Moore v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-304-CR

Â Â Â Â Â DANIEL MOORE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 97-898-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â On August 12, 1998, the appellant, Daniel Moore, pled guilty to the sexual assault of J.F.,
a second degree felony. See Tex. Pen. Code Ann. Â§ 22.011 (Vernon 1994 & Supp. 1998). The
trial court assessed the agreed punishment of 5 yearsâ incarceration in the Institutional Division
of the Texas Department of Criminal Justice, probated for 10 years, and a fine of $2,000. See id.
Â§ 12.33 (Vernon 1994). Moore filed a general notice of appeal within the requisite time period. 
See Tex. R. App. P. 26.2(a)(1) (notice of appeal must be filed within 30 days after the day
sentence is imposed or suspended in open court). However, we conclude that a general notice of
appeal is insufficient to invoke our jurisdiction over this cause and dismiss for want of jurisdiction.
Â Â Â Â Â Â For a notice of appeal to be sufficient when an appeal is sought from a plea bargain
agreement, the notice must:
(A)specify that the appeal is for a jurisdictional defect;
(B)specify that the substance of the appeal was raised by written motion and ruled on
before trial; or
(C)state that the trial court granted permission to appeal.

Tex. R. App. P. 25.2(3). 
Â Â Â Â Â Â Moore filed a general notice of appeal from a judgment based on a negotiated plea agreement. 
We sent Moore a letter on September 30, 1998, informing him that his notice of appeal appeared
to be defective and that his case was subject to dismissal for want of jurisdiction if grounds were
not shown for continuing the appeal within 10 days from the date of the letter. See Tex. R. App.
P. 25.2(d), 44.3. Those 10 days have passed, and we have received no correspondence from
Moore. Consequently, we must conclude that Mooreâs general notice of appeal did not confer
jurisdiction on this court and dismiss the cause for want of jurisdiction.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Appeal dismissed for want of jurisdiction
Opinion delivered and filed October 28, 1998
Do not publish



odman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).  The evidence is not factually insufficient merely because
the factfinder resolved conflicting views of evidence in favor of the State.Â  Cain,
958 S.W.2d at 410.

The Evidence

In July 2004, after receiving a report
that accused Abbott of indecency, Lt. Molly Dox of the Ovilla Police Department
set up a videotaped interview at the childrenÂs advocacy center with the
complainant, W.T., and her mother, Sharon.Â  Abbott was later arrested and
indicted.

Sharon
and W.T.Âs father, Randy, were divorced.Â  Randy had remarried Janice, whose
twin sister Jane is AbbottÂs wife.Â  The twin sisters were close, and as a
result, Randy and Janice spent much time around the Abbotts.Â  Randy had
possession of W.T. two weekends a month, and on those weekends, W.T. usually
went to the AbbottsÂ home in Ovilla in Ellis County to visit.Â  Sharon, the
StateÂs outcry witness, testified that W.T. told her that Abbott had touched
her ÂprivatesÂ several times.Â  W.T. specifically related that Abbott had been
showing her how to do something on his home computer when he put his hands in
her pants and rubbed her privates.

W.T., who was age nine and in the third
grade at the time of trial, testified at trial that Abbott had touched her
private spots more than one time, but she could specifically remember only two
occasions.Â  The first incident that she could remember happened at his house in
the computer room.Â  When everyone else had left the room, Abbott unzipped her
pants and touched her privates.Â  W.T. sometimes called this area her Âbladder,Â
and she explained that bladder and private meant the same thing, which she
identified in a picture as the female sexual organ.Â  She said that Abbott had
placed his hand inside her underwear, with the skin of his hand touching her
skin.[1]Â 
When Abbott touched her, he would move his hand in a circular motion; he would
not speak to her while he was touching her, and afterwards he would act as if
nothing had happened.Â  She felt sad and scared when Abbott touched her.

Lt. Dox and Sharon admitted that W.T.Âs
father was always with W.T. on these visits to the Abbotts when the acts
occurred, but W.T. never reported anything to him or to Janice.Â  There was no
allegation that Abbott had groomed or favored W.T., that Abbott had told W.T.
to keep the acts a secret, or that he had threatened to harm W.T. if she told
anyone.Â  There was no physical or medical evidence.Â  Nor were there any
eyewitnesses; W.T. said that Abbott touched her only when they were alone.Â 
W.T. never mentioned anything about AbbottÂs being aroused while he was
touching her.

Sharon
said that W.T. had not been exhibiting unusual or scared behavior before W.T.
reported the incidents to her, and W.T. never evidenced any hesitancy to go to
AbbottÂs home.Â  W.T. did exhibit scared behavior after the report, but she continued
to do well in school, which had not reported any behavioral problems, such as
sexually acting out.

Abbott testified; he said that W.T. had
been to his home many times with her father over a period of about six years.Â 
He denied ever touching her genitals.Â  W.T. could have been in the room while
he was loading photographs on the computer, but he was not alone with her.Â  He
never showed W.T. favoritism or gave her gifts, except on special occasions. 

Legal Sufficiency

AbbottÂs fourth issue asserts that the
evidence is legally insufficient to prove that he committed the acts with the
intent to arouse and gratify his sexual desire.Â  An essential element of the
offense of indecency with a child is the intent to arouse or gratify the sexual
desire of any person.Â  See Tex.
Pen. Code Ann. Â§ 21.11(a)(1), (c)(1); Duwe v. State, 642 S.W.2d
804, 805 (Tex. Crim. App. 1982).Â  Abbott is correct that there is no direct
evidence, other than the mere touching, that he acted with the intent to arouse
and gratify his sexual desire.Â  But the requisite specific intent can be
inferred from the defendantÂs conduct and remarks and all the surrounding
circumstances.Â  Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
[Panel Op.] 1981); Gottlich v. State, 822 S.W.2d 734, 741 (Tex. App.ÂFort Worth 1992, pet. refÂd) (finding requisite intent to arouse and gratify
sexual desire when defendant placed his hand inside complainantÂs panties and
played with her ÂprivateÂ), abrogated on other grounds by Arevalo v. State,
943 S.W.2d 887, 888-90 (Tex. Crim. App. 1997).Â  An oral expression of intent is
not required; the conduct itself is sufficient to infer intent.Â  C.F. v.
State, 897 S.W.2d 464, 472 (Tex. App.ÂEl Paso 1995, no writ).Â  Nor is there
a requirement that a defendantÂs penis be erect.Â  Gregory v. State, 56
S.W.3d 164, 171 (Tex. App.ÂHouston [14th Dist.] 2001, pet. denied).

Thus, the jury could infer from
AbbottÂs conduct of touching W.T.Âs genitals that it was done with the intent
to arouse and gratify his sexual desire.Â  See Gottlich, 822 S.W.2d at
741; Fetterholf v. State, 782 S.W.2d 927, 933 (Tex. App.ÂHouston [14th
Dist.] 1989, pet. refÂd) (requisite intent to arouse and gratify sexual desire
found from defendantÂs touching sleeping childÂs breast).Â  And the evidence
that Abbott committed the same conduct on other occasions is additional
evidence of intent.Â  See Morgan v. State, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985) (extraneous offense evidence that defendant had touched complainant
in same manner on night before the charged offense and on previous occasions
had Âindubitable probative valueÂ of defendantÂs intent).Â  Adhering to our duty
to view the evidence in the light most favorable to the verdict, we find that a
rational trier of fact could have found beyond a reasonable doubt that Abbott touched
W.T.Âs genitals with the intent to arouse or gratify his sexual desire.Â  Issue
four is overruled.

Â 

Factual Sufficiency

Issue three asserts that the evidence
is factually insufficient to support the juryÂs verdict.Â  Abbott argues that
the evidence is extremely weak because there is no evidence that typically
occurs with sexual allegations, such as physical or medical evidence,
eyewitnesses, and grooming.Â  He also points to W.T.Âs delay in reporting, her
failure to report the incidents to her father, the absence of changes in her
behavior, the absence of a hesitancy to go to AbbottÂs home, and his denial of
the offense.

The lack of physical or medical
evidence in this touching case is reasonably explainable and does not render
the evidence factually insufficient.Â  See Murphy v. State, 4 S.W.3d 926,
930 (Tex. App.ÂWaco 1999, pet. refÂd).Â  Likewise, the absence of eyewitnesses
is easily explainable; W.T. testified that the touching occurred only when no
one else was around.Â  Furthermore, a complainantÂs testimony alone is
sufficient to support a conviction for indecency with a child.Â  Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005) (requirement that victim inform another person within one year
does not apply to person under 17 at time of offense); see Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978).Â  W.T. testified that Abbott committed
the offense as alleged, and her mother testified about W.T.Âs outcry.Â  The jury
was able to judge W.T.Âs demeanor and credibility, and it was free to believe
W.T. and to disbelieve AbbottÂs testimony.

Considering all of the evidence in a
neutral light, we cannot say that the jury was not rationally justified in
finding Abbott guilty.Â  Zuniga, 144 S.W.3d at 484.Â  The evidence
supporting the finding of guilt, considered alone, was not too weak to support
the finding beyond a reasonable doubt, and the contrary evidence was not so
strong that guilt could not be proved beyond a reasonable doubt.Â  See id.
at 484-85. Â We overrule AbbottÂs third issue.

Jury Selection Error

In his fifth issue, Abbott asserts that
the trial court erred in failing to grant a new trial after a juror revealed
for the first time during trial that she knew W.T. and Sharon.Â  Immediately
after Sharon had testified, a juror informed the trial court that she
recognized Sharon and that her son had gone to kindergarten with W.T.Â  Later in
the trial, the trial court questioned the juror, L.L., about it further.Â  L.L. stated
that she did not recognize Sharon and W.T. by their names during voir dire,
that before trial she had not formed an opinion on SharonÂs and W.T.Âs
credibility, that she had not had contact with Sharon and W.T. since
kindergarten (over three years ago), and that her knowledge of Sharon and W.T.
would not influence her verdict.

Abbott raised this issue in his motion
for new trial.Â  L.L., who was the jury foreperson, testified at the hearing,
reiterating the above and adding that she had recognized W.T. when W.T.
testified, that she had no mutual friends with Sharon and that her son had no
mutual friends with W.T.Â  L.L. had not seen Sharon or W.T. in over three years,
and when their children were in kindergarten together, Sharon and L.L. had not
socialized and had not had contact outside of school activities.Â  She had never
spoken to Sharon or W.T., had not formed an opinion about either, and her
recognition of them made no difference to her in the trial.

The Court of Criminal Appeals recently
addressed a similar situation in a case in which a juror realized that the
child sexual assault victim was a member in the girl scout troop of which the
juror was the assistant leader and the jurorÂs daughter was also a member.Â  See
 Franklin v. State, 138 S.W.3d 351 (Tex. Crim. App. 2004).

The Sixth Amendment guarantees the
right to a trial before an impartial jury.Â  Part of the constitutional
guarantee of the right to an impartial jury includes adequate voir dire to
identify unqualified jurors.Â  And we have consistently held that essential to
the Sixth Amendment guarantees of the assistance of counsel and trial before an
impartial jury Âis the right to question veniremembers in order to intelligently
exercise peremptory challenges and challenges for cause.ÂÂ  In Salazar v.
State, [562 S.W.2d 480, 482 (Tex. Crim. App. 1978)], we held that Âwhere a
juror withholds material information during the voir dire process, the parties
are denied the opportunity to exercise their challenges, thus hampering their
selection of a disinterested and impartial jury.ÂÂ  We also found Â[t]hat a
juror will state that the fact that he withheld information will not affect his
verdict is not dispositive of the issue where the information is material and
therefore likely to affect the jurorÂs verdict.ÂÂ  The fact that the juror did
not intend to intentionally withhold information Âis largely irrelevant when
considering the materiality of information withheld.Â

Â 

Id. at 354-55 (footnotes omitted).Â  ÂUnder Texas law, the
defendant must show that the juror withheld material information during voir
dire, and the information is withheld despite due diligence exercised by the
defendant.ÂÂ  Id. at 355-56.Â  Abbott has shown jury-selection error and
that he was deprived of the opportunity to exercise a peremptory strike or challenge
L.L. for cause.

We thus turn to harm; we must reverse
the judgment of conviction unless we determine beyond a reasonable doubt that
the error in jury selection did not contribute to the conviction or
punishment.Â  Tex. R. App. P.
44.2(a); Franklin, 138 S.W.3d at 354.Â  On this step, Franklin is
dissimilar because there the trial court disallowed the defendant an
opportunity to question the juror to show actual bias or prejudice, and on
appeal the defendant was thus not held to that burden.Â  See Franklin, 138 S.W.3d at 355-56.Â  Because the error in jury selection was compounded by
the trial courtÂs disallowance of an opportunity to develop a record, the court
found a violation of the constitutional right to a trial by an impartial jury.Â 
 Id. at 354-57.

Here, Abbott was able to question L.L. to
show actual bias or prejudice, and the result of that questioning showed no actual
bias or prejudice.Â  See Decker v. State, 717 S.W.2d 903, 907 (Tex. Crim.
App. 1983) (acquaintance through employment was not relationship with potential
for bias or prejudice); Brown v. State, 183 S.W.3d 728, 737-40 (Tex.
App.ÂHouston [1st Dist.] 2005, no pet. h.) (jurorÂs distant acquaintance with
witness did not suggest bias or prejudice).Â  The record demonstrates beyond a
reasonable doubt that the error in jury selection did not contribute to
AbbottÂs conviction or punishment.Â  We overrule AbbottÂs fifth issue.

Closing Argument

In issues one and six, Abbott complains
of prosecutorial misconduct and trial court error during closing argument at
the guilt-innocence stage.Â  In closing argument, the defense asserted that the
State had not met its beyond-a-reasonable doubt burden of proof and argued that
a not-guilty verdict would not endorse child molestation or condemn the
victim.Â  In rebuttal, the prosecutor responded:

Ladies and gentlemen, donÂt put your
head in the sand.Â  The defense is trying to encourage you to engage in some
mental gymnastics and do some flip-flops to make yourself feel better for
letting a child molester go. . . . 

We are not here today to make ourselves
feel better.Â  We are here today to see that justice is done.Â  And justice
demands that Johnny Ray Abbott be convicted of molesting [W.T.].Â  ThatÂs what
justice demands.

There is no gray area here.Â  He did it,
or he didnÂt do it.Â  ThatÂs the only choice here.

Â Â Â Â Â Â Â Â Â Â Â  There is no gray area
here.Â  There is no notion that I believe he did it, but you didnÂt prove it.Â 


Â 

[Emphasis added].

Â 

Â Â Â Â Â Â Â Â Â Â Â  At that point the defense
objected that the prosecutor was misstating the law.Â  The trial court overruled
the objection.Â  The prosecutor continued:

Â Â Â Â Â Â Â Â Â Â Â  . . .Â  And you donÂt want
to believe a 50-something year-old man would stick his hands in the pants of a
little girl.

Â Â Â Â Â Â Â Â Â Â Â  You donÂt want to believe
that.Â  I understand that.Â  But folks, this is indecency with a child.Â  It is
what it is.Â  And each and every one of you told me that if the State proves
all elements of our case beyond a reasonable doubt through the testimony of
only one witness, you could convict someone of that crime.Â  And that is what
the State has done.Â  We have proven each and every element of this offense.Â 


Â 

[Emphasis added].

Â 

AbbottÂs first issue complains of the
following:Â  ÂThere is no notion that I believe he did it, but you didnÂt prove
it.ÂÂ  He asserts that the prosecutorÂs statement misstated the law on the
burden of proof and undermined the presumption of innocence.

Jury argument is limited to: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answers to argument of opposing counsel; or (4) a plea for law enforcement.Â  Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).Â  But even when
answering opposing counsel or making a plea for law enforcement, a prosecutor cannot
misstate the law.Â  See, e.g., Whiting v. State, 797 S.W.2d 45, 48 (Tex.
Crim. App. 1990) (prosecutor misstated StateÂs burden of proof on defensive
issue).

Zuniga teaches that evidence of guilt can
preponderate in favor of conviction but still be insufficient to prove the
elements of the crime beyond a reasonable doubt.Â  Zuniga, 144 S.W.3d at
485.Â  Thus, contrary to the prosecutorÂs argument, the notion exists
that a jury can believeÂby a preponderance of the evidenceÂthat the defendant
is guilty but the State did not prove the elements of the crime beyond a
reasonable doubt, the burden of proof that must be met.Â  We conclude that the trial court erred
in overruling AbbottÂs objection to the prosecutorÂs statement.Â  Cf. Gore v.
State, 719 So. 2d 1197, 1200 (Fla. 1998) (holding that the following
prosecutorÂs argument misstated the burden of proof and was error:Â  ÂItÂs simple and it comes down to this in simplicity: If you
believe his story, heÂs not guilty. Â If you believe heÂs lying to you, heÂs
guilty. Â ItÂs that simple.Â).

The law on the burden of proof is
constitutional: Â The Due Process Clause of the Fourteenth Amendment to the
United States Constitution requires that every state criminal conviction be
supported by evidence that a rational factfinder could find as sufficient to
prove all the elements of the offense beyond a reasonable doubt.Â  In re
Winship, 397 U.S. 358, 362-64, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); Coit
v. State, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991).Â  Although the
presumption of innocence is guaranteed by a Texas statute, the statute itself
arises from the constitutional guarantee of a fair and impartial trial.Â  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03
(Vernon Supp. 2005); see Miles v. State, 154 S.W.3d 679, 680-81 (Tex.
App.ÂHouston [14th Dist.] 2004, pet. granted).Â  Because the error is
constitutional, we must reverse the judgment of conviction unless we determine
beyond a reasonable doubt that the prosecutorÂs and the trial courtÂs errors did
not contribute to the conviction.Â  Tex.
R. App. P. 44.2(a); see Miles, 154 S.W.3d at 681.

In making this determination, we do not
focus on the propriety of the outcome of the trial.Â  McCarthy v. State,
65 S.W.3d 47, 56 (Tex. Crim. App. 2001).Â  Instead, our task is to calculate, as
nearly as possible, the probable impact of the error on the jury in light of
the record as a whole.Â  Id. The question is whether the State has proved
beyond a reasonable doubt that the error complained of did not contribute to
the verdict obtained.Â  Satterwhite v. Texas, 486 U.S. 249, 256-57, 108 S.Ct. 1792, 1797-98, 100 L.Ed.2d 284 (1988); Wesbrook v. State, 29
S.W.3d 103, 119 (Tex. Crim. App. 2000).Â  To assess harm, we consider:Â  the
source and nature of the error; the extent to which the State emphasized it; the
probable collateral implications of the error; the weight a juror would
probably place upon it, giving consideration to whether the record contains
overwhelming evidence supporting the finding in question; and whether declaring
the error harmless would encourage the State to repeat it with impunity.Â  Roberson
v. State, 100 S.W.3d 36, 44 (Tex. App.ÂWaco 2002, pet. refÂd).

Â Â Â Â Â Â Â Â Â Â Â  The trial court overruled
AbbottÂs objection, but the prosecutor was the source of the improper comment, which
misstated a basic tenet of criminal lawÂthe StateÂs burden of proof of beyond a
reasonable doubt.Â  Because the prosecutor made the comment only once, he did
not emphasize the error.Â  Rather, just a few sentences later in the argument,
the prosecutor emphasized that the State had met the beyond-a-reasonable-doubt
burden of proof.

Â Â Â Â Â Â Â Â Â Â Â  The probable collateral
implication to be drawn from the comment was that the jury could convict Abbott
if it believed W.T. and disbelieved Abbott, regardless of whether the State
proved all the elements of the criminal offense beyond a reasonable doubt.Â 
However, the comment could also have been reasonably construed as a comment on
the credibility of the witnesses.

Â  Â Â Â Â Â Â Â Â Â  While this case does not present
Âoverwhelming evidenceÂ of guilt, we have held above that the evidence is
legally and factually sufficient.Â  The jury was properly instructed in the jury
charge on the burden of proof beyond a reasonable doubt, and we presume the
jury followed the trial courtÂs instructions.Â  Resendiz v. State, 112
S.W.3d 541, 546 (Tex. Crim. App. 2003); Miles, 154 S.W.3d at 682-83.Â  Abbott
presents no evidence to rebut this presumption.Â  See Colburn v.
State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (appellant pointed to no
evidence to rebut presumption that jury followed instructions and did not file
motion for new trial alleging juror misconduct or obtain hearing to adduce
facts not in record).Â  Because the jury was told of the correct burden of proof
literally dozens of times throughout voir dire, closing argument, and the jury
charge, we cannot say that the jury placed undue weight on one misstatement of
the law.

Â Â Â Â Â Â Â Â Â Â Â  Finally, we examine whether
declaring the prosecutorÂs misstatement of the law harmless will encourage the
State to repeat it with impunity.Â  We conclude that it will not.Â  The misstatement
here appears to have been inadvertent; the prosecutor did not repeat it and
soon thereafter referred to the correct burden of proof. Â In conclusion, we find
beyond a reasonable doubt that the error did not contribute to AbbottÂs
conviction.Â  See Tex. R. App. P. 44.2(a);
cf. Miles, 154 S.W.3d at 682-83.Â  Accordingly, we overrule AbbottÂs
first issue.

The sixth issue complains about the
prosecutorÂs argument that the State did Ânot have to prove why [Abbott] did
what he didÂ and that the trial court erred in overruling his objection.Â  Abbott
argues that this statement eliminated the element of intent to gratify sexual
desire.Â  In complete context, the prosecutor argued:

I also want to explain to you the
language that sexual contact means touching of any part of the genitals of
another person with intent to arouse or gratify the sexual desire of any
person.Â  Intent can be inferred from the facts and circumstances.

. . .

And thatÂs the case in this case.Â  Why
else is a man going to touch a little girlÂs genitals?Â  For his jollies, thatÂs
why.Â  And the facts and the circumstances allow you to infer that intent.

Now, though that may be his intent for
his sexual gratification and you can infer that, the State does not have to
prove why a man would do that because that, frankly, is one of the great
mysteries of the universe.Â  Why would a man do something like that to a little
girl?Â  We donÂt know.Â  And we donÂt have to know.Â  We only have to know that he
did.

. . .

We do not have to prove why he did what
he did.Â  But I submit
to you that if they are going to sit up here before you and call a little girl
a liar, say she fabricated this story, why would she do that?Â  They better
provide you with a legitimate motive for a little girl to subject herself to
this.Â  

[DEFENSE COUNSEL]:Â  Object, Your
Honor.Â  ThatÂs improperly shifting the burden.

THE COURT:Â  Overruled.

Â 

[Emphases added.]

Â 

Â Â Â Â Â Â Â Â Â Â Â  The State responds that
Abbott has not preserved this complaint for appeal.Â  A complaint on appeal must
comport with the objection made in the trial court to preserve it for appellate
review.Â  See Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).Â  It
is clear that trial counsel objected only to the prosecutorÂs statement that
the defense should provide a motive for W.T.Âs allegation.Â  Thus, Abbott did
not preserve the complaint in his sixth issue.[2]
Â We overrule AbbottÂs sixth issue.

Â 

Discovery of VictimÂs Videotaped Interview

Â Â Â Â Â Â Â Â Â Â Â  In issue eight, Abbott
asserts that the trial court abused its discretion in denying his request to
inspect or copy W.T.Âs videotaped interview before trial.Â  W.T. testified at
trial, and the State did not offer the videotape into evidence.

Â Â Â Â Â Â Â Â Â Â Â  A defendant does not have a
general right to discovery of evidence in the StateÂs possession.Â  Quinones
v. State, 592 S.W.2d 933, 940 (Tex. Crim. App. 1980); see Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2005).Â  A
defendantÂs right to discovery is limited to exculpatory or mitigating
evidence.Â  Dickens v. Court of Appeals, Second Supreme Jud. Dist. of Tex., 727 S.W.2d 542, 551 (Tex. Crim. App. 1987).Â  Beyond that, the scope of discovery
is within the trial courtÂs discretion.Â  Quinones, 592 S.W.2d at 940; Tex. Code Crim. Proc. Ann. art. 39.14.Â  Because there is no
showing or argument that the videotape contains exculpatory evidence and the
videotape is not part of the record (it was not offered at trial), we cannot
say that the trial court abused its discretion in denying Abbott discovery of
the videotape.Â  See Dickens, 727 S.W.2d at 544.Â  Issue eight is
overruled.

Mistrial

Â Â Â Â Â Â Â Â Â Â Â  Abbott also testified in
the punishment phase, denying that he had committed the offense and saying that
he had no prior felony or misdemeanor convictions.Â  On cross-examination, the
following exchange occurred:

Q:Â  Who is [S.B.]?

A:Â  My stepdaughter.

Â Â Â Â Â Â Â Â Â Â Â  [DEFENSE COUNSEL]:Â  Your
Honor - -

Q:Â  Has [S.B.] accused you of molesting
- -

Â Â Â Â Â Â Â Â Â Â Â  [DEFENSE COUNSEL]:Â  Your
Honor, may we approach the bench?

Â Â Â Â Â Â Â Â Â Â Â  THE COURT:Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Outside the juryÂs
presence, the trial court was informed that S.B. had accused Abbott of
molesting her, that she had recanted at one time, and that the prosecutor had
her written statement but that she was not present to testify.Â  While the jury
was still not present, the trial court allowed the prosecutor to ask Abbott if
he had in fact molested S.B., and Abbott answered that he did not molest her.Â 
The court ruled that, because S.B. was not going to testify that Abbott had
molested her, the prosecutorÂs questions about S.B. could not be asked in the
presence of the jury merely to place the accusation before the jury and get a
denial from Abbott.

Â Â Â Â Â Â Â Â Â Â Â  Abbott requested a jury
instruction to disregard.Â  The trial court agreed to, stating:

Ladies and gentlemen, the prosecutor
began to ask a question before you were sent out of the courtroom which an
objection was made [to], and they approached the bench.

Â Â Â Â Â Â Â Â Â Â Â  And most of the question
was unintelligible to me, but the jurors may have heard part or all of the
question propounded at the time.Â  And the Court is ruling that you are not to
consider the question that you may have heard, the last question you may have
heard from the prosecutor, for any purpose whatsoever.Â  Disregard it completely.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Abbott moved for a
mistrial, which the trial court overruled.Â  In his second issue, Abbott
complains that the trial court abused its discretion in failing to grant a
mistrial.Â  The denial of a motion for mistrial, which is appropriate for Âhighly
prejudicial and incurable errors,Â is reviewed under an abuse of discretion
standard.Â  See Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App.
2003) (quoting Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App.
2000)); Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

[T]he question of whether a mistrial
should have been granted involves most, if not all, of the same considerations
that attend a harm analysis.Â  A mistrial is the trial courtÂs remedy for
improper conduct that is Âso prejudicial that expenditure of further time and
expense would be wasteful and futile.ÂÂ  In effect, the trial court conducts an
appellate function:Â  determining whether improper conduct is so harmful that
the case must be redone.Â  Of course, the harm analysis is conducted in light of
the trial courtÂs curative instruction.Â  Only in extreme circumstances, where
the prejudice is incurable, will a mistrial be required.

Â 

Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).Â  Thus, the appropriate test for evaluating whether the trial court
abused its discretion in overruling a motion for mistrial is a tailored version
of the test originally set out in Mosley v. State, 983 S.W.2d 249,
259-60 (Tex. Crim. App. 1998), a harm analysis case.Â  See Hawkins,
135 S.W.3d at 77.Â  The Mosley factors that we consider in determining
whether the trial court abused its discretion in denying a mistrial during the
punishment phase are: (1) the prejudicial effect, (2) curative measures, and
(3) the likelihood of the same punishment being assessed.Â  Hawkins, 135
S.W.3d at 77; see Mosley, 983 S.W.2d at 259.

In the punishment phase, the State may
introduce evidence of an Âextraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant or for
which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act.ÂÂ  Tex. Code Crim. Proc. Ann. art. 37.07,
Â§ 3(a)(1) (Vernon Supp. 2005).Â  Before admitting extraneous-offense evidence in
the punishment phase, the trial court must initially determine that a jury
could find beyond a reasonable doubt that the defendant committed the
extraneous offense.[3]
Â Huizar v. State, 12 S.W.3d
479, 484 (Tex. Crim. App. 2000); see
also Ex parte Varelas, 45 S.W.3d 627, 631
(Tex. Crim. App. 2001); Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (plurality).

At the hearing on AbbottÂs motion for
new trial, the prosecutor and S.B. testified.Â  Their testimony, along with the
discussions and arguments made during trial outside the presence of the jury,
leads us to conclude the following:


 The
 prosecutor had spoken to S.B. about her accusation that Abbott had
 molested her.


Â 


 The
 prosecutor knew that S.B. had recanted the accusation at one time.


Â 


 The
 prosecutor knew that if S.B. testified in the punishment phase, S.B. could
 be impeached with her recantation.


Â 


 The
 prosecutor did not subpoena S.B. or ask her to appear and testify
 voluntarily.


Â 


 Knowing
 that S.B. was not going to be testifying, the prosecutor asked Abbott if
 S.B. had accused him of molesting her.


Â 


 The
 prosecutor knew or should have known that, if the trial court allowed him
 to ask Abbott if S.B. had accused him of molestation and Abbott denied it,
 S.B. would not be available to be impeached with her recantation.


Â 

Two other matters are noteworthy.Â  First,
during jury deliberations on guilt-innocence, the jury sent a note asking if
they could find out if Abbott had any prior convictions, to which the trial
court replied that the jury was to consider only the evidence that had been
submitted.Â  Second, during punishment-phase argument, the prosecutor asked the
jury to assess the maximum twenty-year sentence but no fine, which is exactly
what the jury did.

Prejudicial effect.Â  Applying the Hawkins/Mosley
factors, we first observe that the prosecutorÂs questionÂwithout S.B. present
to testifyÂappears to have been calculated to inflame the minds of the jury.Â 
The intent appears to have been to inform the jury, without admissible evidence,
that Abbott had previously been accused of child molestation.Â  This flagrancy compounds
the obvious prejudicial effect of the question in this case.Â  See Roberson,
100 S.W.3d at 40-44 (flagrancy and persistence compounds prejudicial effect).Â 
With the jury just having found Abbott guilty of indecency with a child, we
cannot conceive of information that would be more prejudicial than the improper
suggestion that he may have molested his stepdaughter.[4]

Curative measures.Â  In most instances, an instruction to
disregard will cure the prejudicial effect.Â  Wesbrook v. State, 29
S.W.3d 103, 115-16 (Tex. Crim. App. 2000).Â  An instruction to disregard is
presumptively inadequate only in the most blatant cases; only offensive or
flagrantly improper conduct warrants reversal when there has been an
instruction to disregard. Â Wilkerson v. State, 881 S.W.2d 321, 327 (Tex.
Crim. App. 1994); Roberson, 100 S.W.3d at 41.Â  In other words, an
instruction to disregard will be presumed effective unless the facts of the
case suggest the impossibility of removing the impression produced on the minds
of the jury.Â  Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim. App.
1988); Veteto v. State, 8 S.W.3d 805, 811 (Tex. App.ÂWaco 2000, pet. refÂd).Â 
The effectiveness of a curative instruction is determined on a case-by-case
basis.Â  Veteto, 8 S.W.3d at 811.[5]Â 
The trial courtÂs instruction in this case was adequate (cf. Veteto, 8
S.W.3d at 812), but the severity of the prejudicial effect leads us to conclude
that the instruction could not remove from the jurorsÂ minds the impression
that the question was designed to createÂthat Abbott was a repeat offender.[6]

Likelihood of the same punishment being
assessed.Â  Finally, we
consider the likelihood of the same punishment being assessed and the harm to Abbott
as measured by the severity of his sentence.Â  Abbott testified in this
vigorously contested case, and we know that during guilt-innocence the jury
wanted to know if Abbott had committed similar offenses.Â  Despite his having no
prior convictions and there being no other punishment evidence of extraneous
offenses or bad acts, Abbott received the maximum prison sentence of twenty
years, as the prosecutor had requested.Â  We believe that it is highly unlikely
that, but for the prosecutorÂs question suggesting AbbottÂs molestation of his
stepdaughter, the jury would have assessed the maximum twenty-year sentence.Â 
The severity of AbbottÂs sentence strongly suggests that the trial courtÂs
instruction did not cure the error and that Abbott was harmed by the improper
question.

We conclude that the trial court abused
its discretion in denying the mistrial motion.Â  We sustain AbbottÂs second
issue and will reverse and remand the case for a new punishment hearing.Â  Because
we are remanding for a new punishment hearing, we need not address AbbottÂs
seventh issue, which complains that the twenty-year sentence is cruel and
unusual because it is grossly disproportionate to the offense.

Â 

Â 

Cumulative Error

Â Â Â Â Â Â Â Â Â Â Â  Issue nine asserts that cumulative
error denied Abbott a fair trial.Â  See Chamberlain v. State, 998 S.W.2d
230, 238 (Tex. Crim. App. 1999) (ÂIt is conceivable that a number of errors may
be found harmful in their cumulative effect.Â).Â  We have found three errors, two
that are harmless and the other warranting a new punishment hearing.Â  Cumulative
error is not present, and issue nine is overruled.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We affirm the judgment of
conviction.Â  We reverse that portion of the judgment assessing punishment of a twenty-year
sentence and remand this cause to the trial court for a new punishment
hearing.Â  Tex. Code Crim. Proc. Ann.
art. 44.29(b) (Vernon Supp. 2005).

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Â Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray concurring and dissenting)

Judgment
of conviction affirmed

Punishment
reversed, cause remanded

Opinion
delivered and filed June 7, 2006

Publish

[CR25]

Â 

(Chief
Justice Gray concurs and dissents, noting he would affirm the trial courtÂs
judgment in its entirety.Â  While there are a number of statementÂs in the opinion
that I cannot join, I concur in affirming the trial courtÂs judgment of
conviction.Â  I cannot, however, find error in the trial courtÂs denial of the
motion for mistrial based upon what was before the trial court at the time of
the ruling, which of necessity must disregard the evidence obtained at the
motion for new trial hearing.Â  Further, the evidence from that hearing, only a
summary of which is presented, does not convince me, like it has the majority,
that the prosecutor had no basis for asking the question that, from this
record, it is doubtful that the jury ever heard.Â  I also note that there is no
issue arguing error in the denial of the motion for new trial.)









Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  She also described a similar incident
at AbbottÂs lake house, which was not in Ellis County.Â  On that occasion, while
others were shooting fireworks, W.T. said that she and Abbott were alone on the
porch and she was reading a book when Abbott placed his hand inside her pants.Â 
Abbott testified about an occasion at his lake house when he and W.T. were on
the porch and she read a book to him.





Â Â Â  [2]Â Â Â Â Â Â Â Â Â Â  We
would find that the State was not arguing that it did not have to prove
specific intent to arouse or gratify sexual desire.Â  Plainly, the State was
merely stating that it did not have to prove why a grown man would be sexually
aroused or gratified by touching a little girlÂs genitals.





Â Â Â  [3]Â Â Â Â Â Â Â Â Â Â  The
State suggests that the prosecutorÂs attempt to obtain a judicial admission
from Abbott that he had molested his stepdaughter is no different than obtaining
a judicial admission from a defendant that he is the same person previously
convicted.Â  See Laday v. State, 685 S.W.2d 651, 652 (Tex. Crim. App.
1985).Â  The difference, of course, is that in those situations, the prosecutor
has (or should have) an admissible pen packet that proves the prior conviction
beyond a reasonable doubt, while in this case the prosecutor admittedly had no
admissible evidence to prove the extraneous offense. 





Â Â Â  [4]Â Â Â Â Â Â Â Â Â Â  The
State appears to suggest that, because the trial court did not hear the entire
question due to defense counselÂs interjection during the prosecutorÂs
question, perhaps the jury did not hear it either.Â  Before the jury returned,
the trial court had the court reporter read back the question, ÂHas [S.B.]
accused you of molesting - -.ÂÂ  While the question was not completed, the
prejudicial words had been spoken, and because the court reporter heard them,
we assume that the jury did as well.Â  

Â 





Â Â Â 
[5]Â Â Â Â Â Â Â Â Â Â  We
have determined that we will gauge the effectiveness of an instruction to
disregard by considering the following factors:Â  (1) the nature of the error;
(2) the persistence of the prosecutor; (3) the flagrancy of the violation; (4)
the particular instruction given; (5) the weight of the incriminating evidence;
and (6) the harm to the accused as measured by the severity of the sentence.Â  Roberson,
100 S.W.3d at 41.Â  We will incorporate these factors, as applicable to
punishment-phase error, into our Hawkins/Mosley analysis.

Â 





Â Â Â  [6]Â Â Â Â Â Â Â Â Â Â  ÂIt
is better to follow the rules than to try to undo what has been done.Â 
Otherwise stated, one cannot Âunring a bellÂ; Âafter the thrust of the saber it
is difficult to say forget the woundÂ; and finally Âif you throw a skunk into the jury box, you
can't instruct the jury not to smell
it.ÂÂÂ  Walker v. State, 610
S.W.2d 481, 486 n.6 (Tex. Crim. App. [Panel Op.] 1980) (quoting Dunn v.
United States, 307 F.2d 883, 886 (5th Cir.Â  1962)); see also Bruton v. United States, 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476 (1968) (ÂThe naive assumption
that prejudicial effects can be overcome by instructions to the jury . . . all
practicing lawyers know to be unmitigated fiction.Â) (citing Krulewitch v.
United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949)
(Jackson, J., concurring)).